872 So.2d 326 (2004)
Nestor GARCIA, Appellant,
v.
STATE of Florida, Appellee.
No. 2D03-529.
District Court of Appeal of Florida, Second District.
April 14, 2004.
*327 Nicholas M. Matassini of the Matassini Law Firm, P.A., Tampa, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Helene S. Parnes, Assistant Attorney General, Tampa, for Appellee.
FULMER, Judge.
Nestor Garcia pleaded no contest to the charges of possession of cocaine, delivery of cocaine, trafficking in cocaine, and possession of cannabis, reserving the right to appeal the denial of his motion to suppress evidence. The motion to suppress was based on a challenge to the search warrant that authorized search of Garcia's residence for cocaine. Because we agree with Garcia that the affidavit on which the search warrant was based lacked sufficient probable cause to indicate that cocaine was located within the home, we reverse with directions to grant the motion to suppress.
In relevant part, the affidavit states:
5. During the week of 7/15/01 your affiant met with a confidential informant (CI) who told police about a white male by the name of Nestor Garcia, who was distributing powder cocaine in the Tampa Bay Area. The CI has known the suspect for approximately eight months and has purchased cocaine from the suspect for four months. The CI typically purchases one ounce of cocaine per week and paid $800-$825 per ounce. The CI has been told that the suspect has a safe inside of the home and possibly has co-conspirators who maintain a "stash house."
6. During the week of 8/5/01 your affiant met with a confidential informant and established a controlled meeting. The CI met with the suspect, Nestor Garcia, and discussed future narcotics transactions. During the meeting, the suspect gave the CI one ounce of cocaine on consignment. Your affiant and Detective Ford identified the suspect vehicle as a 2000 Chevrolet pickup truck and located it at the suspect residence.
7. Following the meeting your affiant met with the CI and conducted debriefing. The CI gave your affiant one ounce of powder cocaine. The cocaine was later narco tested positive and is now housed in the Tampa Police property section. The CI told your affiant that the suspect has never "fronted" cocaine in the past and this situation was unexpected. The suspect agreed to sell as much cocaine as the CI could afford and they agreed to meet for a second purchase *328 and to make repayment within the next few days.
8. During the week of 8/5/01 your affiant established a controlled buy operation. Your affiant met with a CI and gave the CI instructions to repay the suspect, Nestor Garcia, $750.00 for the one ounce delivered on consignment and purchase a second ounce for an additional $750.00. The CI was provided with funds from the Tampa Police Narcotics Fund. The CI was searched before and after the operation for additional currency and/or illegal contraband with negative effects. Constant and continuous surveillance was maintained during the entire purchase. Before the operation began police established a fixed surveillance at 4328 Honey Vista Circle [Garcia's residence]. The CI contacted the suspect by telephone and the two agreed to meet at the Kash and Karry Parking Lot at North Dale Mabry and West Northdale. The call was consensually monitored and recorded by your affiant. Police observed the suspect leave from 4328 Honey Vista Circle and then police observed him arriving to the meeting with the CI. The CI and suspect met for approximately three minutes and then both parties went in separate directions. The meeting was monitored by police and recorded. Police then detained and arrested the suspect in the parking lot of the Kash and Karry before he drove back to 4328 Honey Vista Circle. During the purchase police recorded a conversation where the suspect made the transaction and negotiated the sale of three ounces of cocaine per week to the CI.
9. Following the purchase your affiant met with the CI and took possession of one ounce of cocaine. The cocaine was later narco tested and placed into Tampa Police property room. Your affiant debriefed the CI. The CI told your affiant that the suspect had the one ounce on his person and charged $1450.00 for the one ounce delivered and the ounce previously delivered on consignment. The suspect told the CI that he would deliver three ounces to the CI on every Monday and collect the profits on the following Friday.
10. Following the arrest of the suspect, police located misdemeanor amounts of marijuana in his vehicle. Sergeant Morman conducted a post Miranda interview. The defendant told police that he had marijuana and firearms inside of his home.
11. The affiant believes that the information provided by the confidential informant during the conduct of this investigation is true, accurate, and reliable based on the following:
(a) There has been no occasion known to your affiant when the informant has been untruthful or deceptive in regards to information provided to law enforcement.
(b) In the past, the informant has provided information that has led to the identification, arrest, and conviction of drug traffickers.
12. Based on the forgoing totality of the circumstances, the affiants have reason to believe and [do] believe that there are currently quantities of the controlled substance, Cocaine ... being kept, stored and/or maintained at or within the premises[ ] described in this Affidavit....
A hearing was held on Garcia's motion to suppress at which the following additional relevant facts were shown. First, the affidavit fails to mention that the CI was working for the affiant, Detective Massucci, "in lieu of charges" and that the detective had only used the CI on one previous occasion. When the detective *329 was asked "Don't you think that an informant that is working off charges or in lieu of charges is someone that is apt to be less reliable than someone who's doing this because they're a good citizen?" the detective responded, "I've never had a good citizen work as an informant." Also omitted from the affidavit is the fact that when the CI first told the detective about Garcia, during the week of July 15, 2001, it had been two months since the CI had purchased any cocaine from Garcia. More important, the CI had never been inside Garcia's residence and had never seen any narcotics there.
Facts alleged in the affidavit pertaining to the two purchases were also controverted during the hearing. The meeting referenced in paragraph 6 between the CI and Garcia during the week of August 5, 2001, was not, in fact, a controlled meeting, as stated in the affidavit. And, no officer witnessed the meeting or witnessed Garcia at the meeting. In paragraph 8, the affidavit states that the CI contacted the suspect by telephone; in fact, the CI contacted Garcia by paging him. Pertaining to the transaction at the Kash and Karry parking lot, "constant and continuous" visual surveillance was not maintained on Garcia from the time he left his house. According to one of the officers, Garcia was inside the grocery store out of the officers' sight at some point before he met with the CI.
In reviewing the trial court's denial of the motion to suppress, we are bound by the trial court's factual findings if they are supported by competent, substantial evidence; however, the determination of the legal issue of probable cause is subject to de novo review. Pagan v. State, 830 So.2d 792, 806 (Fla.2002), cert. denied, 539 U.S. 919, 123 S.Ct. 2278, 156 L.Ed.2d 137 (2003). "In determining whether probable cause exists to justify a search, the trial court must make a judgment, based on the totality of the circumstances, as to whether from the information contained in the warrant there is a reasonable probability that contraband will be found at a particular place and time." Id. at 806 (citing Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). The duty of the reviewing court is to ensure that the magistrate had a substantial basis for concluding that probable cause existed, and this determination must be made by examining the four corners of the affidavit. Id. In Pagan, the court discussed an affidavit based on hearsay from a CI:
The affidavit must state that the affiant has personal knowledge of the confidential informant's veracity or the affidavit must contain sufficient independent corroborating evidence. As this Court said in State v. Peterson, 739 So.2d 561 (Fla. 1999):
Hearsay information provided by a confidential informant can be sufficient to support a search warrant, see State v. Wolff, 310 So.2d 729, 733 (Fla. 1975), provided the affidavit satisfies the Gates test. See State v. Butler, 655 So.2d 1123, 1126-30 (Fla.1995). "Veracity" and "basis of knowledge" are among the factors to be considered in assessing the reliability of an informant's information. See Vasquez v. State, 491 So.2d 297, 299 (Fla. 3d DCA 1986).
739 So.2d at 564.
830 So.2d at 806-07.
The court in Pagan also discussed the procedure to be followed when an affidavit omits relevant facts or contains false statements:
When properly challenged, the affidavit must also be examined for omissions made with intent to deceive or with reckless disregard of whether such information should have been revealed to *330 the magistrate. See Johnson v. State, 660 So.2d 648 (Fla.1995). The reviewing court must determine whether the omitted facts, if added to the affidavit, would have defeated probable cause and whether the omission resulted from intentional or reckless police conduct that amounts to deception. See State v. Van Pieterson, 550 So.2d 1162 (Fla. 1st DCA 1989). The inclusion of statements by innocent mistake is insufficient to defeat the authenticity of an affidavit. See Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). Even where a court finds the police acted deceptively, it must excise the erroneous material and determine whether the remaining allegations in the affidavit support probable cause. If the remaining statements are sufficient to establish probable cause, the false statement will not invalidate the resulting search warrant. See Terry v. State, 668 So.2d 954 (Fla.1996). If, however, the false statement is necessary to establish probable cause, the search warrant must be voided, and the evidence seized as a result of the search must be excluded. See id. (citing Franks, 438 U.S. at 156, 98 S.Ct. 2674, 57 L.Ed.2d 667); see also Thorp v. State, 777 So.2d 385 (Fla.2000).
830 So.2d at 807.
The affidavit in this case fails to establish a nexus between the object of the search, cocaine, and Garcia's residence. Even if we overlook the omissions and errors within the affidavit, the determination that cocaine was located within the residence was necessarily based on speculation, rather than a fair probability. See Burnett v. State, 848 So.2d 1170, 1173-74 (Fla. 2d DCA 2003) (concluding that warrant application failed because the affidavit failed to set forth crime-specific facts establishing likelihood that evidence of defendant's possession of child pornography would be found at the places to be searched). We conclude that the factual deficiencies in the affidavit render the warrant invalid for lack of probable cause.
The State argues that the search can be upheld on the good faith exception to the exclusionary rule recognized in United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). We disagree. Where, as here, the supporting affidavit fails to establish probable cause to justify a search, Florida courts refuse to apply the good faith exception. Getreu v. State, 578 So.2d 412 (Fla. 2d DCA 1991); Bonilla v. State, 579 So.2d 802 (Fla. 5th DCA 1991).
Our reversal will not affect the convictions for all charges. However, Garcia's written plea agreement specifies that if he is successful on appeal, he will be resentenced on counts three and four. Accordingly, we reverse and remand for the trial court to grant the motion to suppress and to conduct further proceedings consistent with this opinion and Garcia's plea agreement.
Reversed and remanded with directions.
CASANUEVA, and SALCINES, JJ., Concur.