934 So.2d 595 (2006)
STATE of Florida, Appellant,
v.
Cornelius D. PAIGE, Appellee.
No. 5D05-2737.
District Court of Appeal of Florida, Fifth District.
July 21, 2006.
*596 Charles J. Crist, Jr., Attorney General, Tallahassee, and Kellie Nielan, Assistant Attorney General, Daytona Beach, for Appellant.
James S. Purdy, Public Defender, and Tomislav David Golik, Assistant Public Defender, Daytona Beach, for Appellee.
SHARP, W., Senior Judge.
The state appeals from an order which granted Paige's motion to suppress evidence seized pursuant to a search warrant. The trial court concluded the information in the affidavit was stale and otherwise insufficient to establish probable cause to issue the warrant. We respectfully disagree and reverse.[1]
On October 8, 2003, law enforcement officers searched a residence at 350 Isabella Drive in Longwood pursuant to a warrant. Items seized from the residence included a kilogram of cocaine, packaging for cocaine, cannabis, a .357 Ruger revolver, ammunition (.9mm and .357 caliber) and drug paraphernalia.
Francheska Ward, one of the occupants of the residence, told officers she lived there with her boyfriend, Paige. Ward implicated Paige in the business of selling drugs.
Paige was charged with trafficking in cocaine (400 grams or more but less than 150 kilograms), possession of a firearm by a convicted felon, possession of not more than 20 grams of cannabis and use or possession of drug paraphernalia. Paige moved to suppress the evidence on the basis that the affidavit in support of the warrant was insufficient and based on stale information. The trial court agreed and suppressed the evidence.
In determining whether probable cause exists to justify a search, the trial court must make a judgment, based on the totality of the circumstances, as to whether, from the information contained in the warrant, there is a reasonable probability that contraband will be found at a particular place and time. Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). As the Court in Gates explained:
The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing]" that probable cause existed.
462 U.S. at 238-239, 103 S.Ct. 2317.
Whether the state established probable cause prior to obtaining a search warrant is a question of law subject to de novo review. Pagan v. State, 830 So.2d 792 (Fla.2002), cert. denied, 539 U.S. 919, 123 S.Ct. 2278, 156 L.Ed.2d 137 (2003); Martin v. State, 906 So.2d 358 (Fla. 5th *597 DCA 2005). Thus this court looks only at the four corners of the affidavit to determine if, based on the totality of the circumstances and a common sense assessment, probable cause is shown. Id.[2]
Here the affidavit presented sufficient information to show a fair probability that contraband would be found at the residence. Briefly summarized, the affidavit stated the following:
 The home was the residence of Yvonda Brown, John Davis, Debra Sadler and Francheska Ward.
 The affiant, Seminole County Deputy Sheriff Chris Stronko, has been in law enforcement since 1996, satisfied the required Police Standards and Training Program in 1995, completed a 40 hour training course in Narcotics Identification and Investigation in 1999, attended the Federal Law Enforcement Training Center, Criminal Investigator Training Program, which included a 40 hour training on Narcotics Identification and Clandestine Drug Labs, and has conducted and assisted in numerous controlled substance investigations.
 In mid-July 2003, Stronko received information from Longwood police from a concerned citizen who wished to remain confidential regarding possible drug sales from the residence. The concerned citizen reported unusual amounts of short stay vehicular and pedestrian traffic and witnessed people placing trash bags in the passenger vehicles and removing trash bags from the residence.
 The regular trash pick-up days for the residence are Tuesdays and Fridays. Stronko went to the residence on Tuesday, July 29, 2003, Friday, August 8, 2003, and Tuesday, August 12, 2003 to collect refuse but no trash had been placed curbside on any of those days.
 It was common for persons engaged in the use and/or sale of controlled substances not to put their trash out for collection in an effort to hinder law enforcement.
 On August 26, 2003, Stronko saw about 20 black trash bags put out for refuse collection. Stronko removed 8 bags for inspection.
 The bags contained suspect cannabis, one suspect empty kilogram cocaine package, containing a large amount of suspect cocaine residue, and mail addressed to Yvonda Brown, John Davis, Debra Sadler and Francheska Ward at the address.
 Field presumptive tests indicated positive results for the suspect cannabis and cocaine.
 The empty cocaine package had an outer wrapper of brown paper heavily taped on both the inner and outer surface with packing tape. The outer layer appeared to be opened in a very delicate manner (sectioned in four quadrants opening from the middle). This is a common method for opening a kilogram cocaine package where possible spillage of the contents could occur.
 The next layer consisted of a heavy layer of plastic wrap taped with packing tape. The third layer consisted of plastic wrap smeared with petroleum based automotive grease. The use of grease or other items to mask the scent of illegal drugs is very common among drug traffickers to avoid detection by canines trained to detect illegal drugs by *598 scent. The final layer consisted of some form of rubber and heavy plastic wrap.
 Through his training and experience, it was common knowledge that cocaine, as packaged in the empty kilogram package, was not indicative of personal use or consumption.
 Cocaine in the kilogram amount is normally reduced to smaller quantities from the kilogram weight, then multiplied with cutting agents and distributed for street level sales in ounce and gram quantities.
 On August 27, 2003, Judge Eaton signed a search warrant based on the above facts.
 Law enforcement decided to conduct surveillance of the residence in an effort to develop intelligence regarding a possible distribution network related to the quantity of cocaine discovered in the original investigation.
 On September 3, 2003, at about 1:15 pm, agents observed Anthony Mays leave the residence in a 2000 Chrysler Concorde and go to the Oviedo area. At about 3:00 pm, agents observed Elton Paige leave the residence in a 1999 Ford Mustang. Agents followed him to a middle school.
 On September 4, 2003, at about 2:05 pm, Francheska Ward and an unknown black female arrived at the residence. About an hour and 10 minutes later, Ward left the residence and went to Gore Avenue and Parramore Street. Due to counter-surveillance in the neighborhood, surveillance on Ward was terminated.
 On September 5, 2003, at about 10:49 am, a Gold Buick arrived at the residence with Ward, Elton Paige and Cornelius Paige. All three went into the house and then returned to the Buick. Agents followed them to the intersection of SR434 and 17/92 where they arranged for Longwood police to conduct a traffic stop. One of the police officers smelled the strong odor of burnt cannabis. The vehicle went to a subdivision for a short period of time and left. The vehicle started to drive erratically and surveillance was terminated.
 On September 8, 2003, at about 10:35 am, agents observed Elton Paige put trash outside the residence. At about 3:00 pm, agents observed an unknown older black male carrying a white plastic bag leave the residence on a bicycle. Agents followed him to the East Altamonte area. The man returned to the residence without the white plastic bag.
 On September 9, 2003, at about 7:00 pm, agents followed a black male (later identified as Earley Lee Cooper) in a gold Buick, which had been parked in the driveway of the residence, to the intersection of Jackson and Oak Streets in the East Altamonte area. The man met Rodney Florence at an apartment there.
 On September 10, 2003, at about 11:16 am, agents observed an unknown black female exit the residence with a white plastic bag and leave the area on a bicycle. Agents followed her to the East Altamonte Springs area. Surveillance was discontinued when the woman entered the Jackson Street area.
At about 12:05 pm, agents observed Cornelius Paige arrive at the residence in a 2003 Cadillac. A few minutes later, Ward arrived. At about 12:28 pm, Paige left the residence and was seen talking on his cell phone. Agents followed Paige to the Orlando area but surveillance was terminated because of Paige's erratic driving.
At about 9:00 pm, Cooper left the residence on a bicycle. Marked units *599 stopped Cooper who gave his address as the Isabella residence.
 On September 12, 2003, at about 9:20 am, Mays arrived at the residence. Cooper opened the door and the two had a brief conversation. Mays then left the area.
 On September 15, 2003, at about 1:25 pm, Ward and Paige arrived at the residence in the Cadillac. About 20 minutes later, Cooper left the residence, got into the Cadillac and left the area. About 20 minutes later, Cooper returned to the residence in the Cadillac. About 35 minutes later, a tall thin black male left the residence. Ward and Paige left the residence in the Cadillac at about 3:20 pm.
 On September 24, 2003, agents executed a search warrant at the Oak Street apartment where Cooper had met with Florence on September 9th. The search yielded 16.5 grams of suspect crack cocaine and 55.5 grams of suspect cannabis.
 The East Altamonte community is a designated federal "Weed and Seed" prosecution area well known for street level drug sales.
 The criminal history check of Cornelius Paige revealed the following drug related arrest criminal history:
January 1992Possession of cocaine, possession of cannabis, smuggling cocaine into prison
October 1992Probation violation
January 1999Possession of cannabis
January 1999Possession of cannabis
December 1999Probation violation, possession of cannabis
March 2000Sale/delivery of cocaine
 The criminal history check of Elton Paige revealed the following drug related arrest criminal history:
October 1995Possession of cocaine
July 1996Possession of cannabis
October 1998Possession of cocaine with intent to sell within 1000 feet of a church
April 1999Possession of cocaine with intent to sell within 1000 feet of a church
March 2002Possession of cannabis
December 2002Possession of cannabis
 The criminal history check of Anthony Mays revealed the following drug related arrest criminal history:
July 1992Felony possession of a controlled substance (3 counts)
March 1994Felony possession of a controlled substance
July 1994Possession of cocaine, possession of cannabis
August 1999Possession of cannabis, possession of drug paraphernalia
September 1999Purchase of cocaine, possession of cannabis, possession of drug paraphernalia, possession of a controlled substance without a prescription
December 1999Possession of cocaine, possession of cannabis, possession of drug paraphernalia
February 2000Possession of cocaine with intent to sell within 1000 feet of a church, delivery of methamphetamine, possession of cannabis
June 2000Possession of cannabis, possession of drug paraphernalia
September 2001Possession of cocaine with intent to sell
January 2002Probation violation
 The criminal history check of Earley Cooper revealed the following drug related arrest criminal history:
July 1986Sale of cocaine, possession of cocaine, deliver/distribute cocaine
January 1987Delivery of cocaine
April 1988Probation violation
May 1989Probation violation

*600 December 1989Sale of cocaine, possession of cocaine, possession of cannabis
September 1991Sale of Cocaine
November 1991Sale of cocaine
March 1992Probation violation
May 1995Sale/delivery of cocaine
March 1998Sale/delivery of cocaine
November 1999Possession of cocaine with intent to sell, possession of cocaine
 The criminal history check of Rodney Florence revealed the following drug related arrest criminal history:
March 1995Possession of cocaine with intent to distribute, possession of drug paraphernalia
August 1997Possession of cocaine with intent to distribute
July 2001Possession of a controlled substance without a prescription
February 2002Possession of a controlled substance without a prescription
In sum, the affidavit showed a tip in July of possible drug sales from the residence from a concerned citizen who reported short stays and persons removing trash bags from the residence, a trash pull in August which produced evidence of cannabis and cocaine and packaging for a kilogram of cocaine which was indicative of sale or distribution, and surveillance in September which showed various persons, some with plastic bags, coming and going from the residence and to known drug areas. In addition, the persons occupying or visiting the residence had extensive drug offense histories and appear to be in the business of drug dealing.
These facts are more than sufficient to establish probable cause for issuance of the warrant. See State v. Gross, 833 So.2d 777 (Fla. 3d DCA 2002) (suppression order reversed where probable cause existed for issuance of search warrant based on anonymous tip that defendant was selling drugs at her new address, single search of garbage can at defendant's residence which produced drug paraphernalia and 50 small plastic bags, half of which contained cocaine residue, and defendant's history of cocaine sales at her prior address); State v. Stevenson, 707 So.2d 902 (Fla. 2d DCA 1998) (suppression order reversed where affidavit stating that sheriff's department had received anonymous tip from neighbor that cocaine and marijuana were being sold at defendant's residence and evidence of cocaine and drug paraphernalia were found when sheriff did trash pull at residence was sufficient to establish probable cause for search warrant, despite fact that tip had been made about six weeks earlier).
In finding no probable cause, the trial court concluded the information from the July anonymous tip and the August trash pull was stale because it was more than 30 days old. However, the federal courts have held there is no "bright line" rule for staleness. See, e.g. United States v. Tyler, 238 F.3d 1036 (8th Cir.2001); United States v. Wagner, 989 F.2d 69 (2nd Cir. 1993).
Whether the allegations in an affidavit are sufficiently timely to establish probable cause depends on the particular circumstances of the case and probable cause cannot be quantified by simply counting the number of days between the occurrence of the facts supplied and the issuance of the affidavit. United States v. Koelling, 992 F.2d 817 (8th Cir.1993); United States v. McCall, 740 F.2d 1331 (4th Cir.1984). Time factors must be examined in the context of a specific case including the nature of the unlawful activity alleged, the length of the activity, and the nature of the property to be seized. McCall.
Here law enforcement obtained a warrant on August 27th based on the tip and *601 trash pull. Law enforcement decided not to execute the warrant but instead conducted surveillance of the residence. This surveillance showed activity consistent with drug sales and indicated the illegal activity was ongoing. When an affidavit establishes the existence of a widespread, firmly entrenched, and ongoing narcotics operation, which is observed to be continuing, a staleness argument loses much of its force. United States v. Leasure, 319 F.3d 1092 (9th Cir.2003). See also United States v. Jiminez, 224 F.3d 1243 (11th Cir.2000), cert. denied, 534 U.S. 1043, 122 S.Ct. 620, 151 L.Ed.2d 542 (2001) (even if information contained in search warrant affidavit is stale, such information is not fatal where government's affidavit updates, substantiates, or corroborates stale material).
In addition, the kilogram cocaine package found in the trash pull indicated an amount too large for mere personal consumption but consistent with drug sales.[3] In Gross, the court noted that a small amount of drugs might indicate personal use. However, packaging materials are indicative of sale. Where a person is in the business of selling cocaine, it is reasonable to expect that contraband, paraphernalia, and proceeds will be found on the premises. Id.
In the present case, law enforcement had surveillance activity, after the trash pull, which showed persons leaving the home with plastic bags and persons with extensive histories of drug offenses either occupying or visiting the residence. Thus it was logical to assume that drugs would still be found in the residence when law enforcement sought the second warrant. In these circumstances, the information in the affidavit was not impermissibly stale. See United States v. Iiland, 254 F.3d 1264 (10th Cir.2001) (information contained in affidavit supporting the search warrant for defendant's apartment and storage unit was not impermissibly stale; although some of the circumstances stated in the affidavit occurred about three months before warrant was obtained, other facts showed that defendant's alleged drug trafficking was ongoing over considerable period of time, that defendant kept drugs he sold in storage unit and was still renting and visiting unit a few days before warrant was issued); Smigiel v. State, 439 So.2d 239 (Fla. 5th DCA 1983), rev. denied, 447 So.2d 888 (Fla.1984) (magistrate who issued warrant to search defendant's law office for magnetic tape eraser could properly conclude that crime of tampering with evidence had been committed by defendant in his law office and that instrumentality or evidence of crime could be found there, despite fact that ten months had elapsed since commission of crime, where client later admitted he and defendant conspired to erase tape, client's testimony was corroborated by police officer and magnetic tape eraser was item ordinarily used in law office).
The "trash pull" cases cited by Paige, Cruz v. State, 788 So.2d 375 (Fla. 4th DCA 2001), Gesell v. State, 751 So.2d 104 (Fla. 4th DCA 1999) and Raulerson v. State, 714 So.2d 536 (Fla. 4th DCA 1998), are distinguishable. Those cases involved anonymous tips of criminal activity and trash pulls which revealed the presence of small amounts of drugs. The Fourth District concluded that since the officers did not conduct any surveillance or independent follow-up investigation to corroborate the anonymous tip, perform additional garbage pulls, or develop any other facts to show a pattern of continuous drug activity, they failed to establish a fair probability that drugs would still be found on the premises.
*602 Here, however, there was more than a tip and a trash pull. Law enforcement conducted surveillance and observed individuals leaving the premises with plastic bags and followed others to known drug areas. Furthermore, the magistrate was entitled to consider the extensive histories of drug related arrests of the visitors/occupants of the residence. See Gross (prior history of drug offenses is one factor which may be taken into account in determining probable cause).
REVERSED and REMANDED.
PLEUS, C.J., and MONACO, J., concur.
NOTES
[1] Our determination that the affidavit was sufficient to establish probable cause for issuance of the warrant renders the other issues raised by the state moot.
[2] "Probable cause" has been defined as a reasonable ground of suspicion supported by circumstances sufficiently strong to warrant a cautious person in the belief that the person is guilty of the offense charged. Schmitt v. State, 590 So.2d 404 (Fla.1991), cert. denied, 503 U.S. 964, 112 S.Ct. 1572, 118 L.Ed.2d 216 (1992).
[3] A kilogram is equivalent to 1000 grams or 2.2046 pounds.