PER CURIAM.
The State of Florida appeals from an order granting Christopher McGill’s motion to suppress evidence seized from his home pursuant to a search warrant. On appeal, the State argues that the trial court erred: (1) in finding that the affidavit in support of the search warrant did not contain sufficient facts to establish probable cause to issue the warrant; and (2) in ruling that the good faith exception to the exclusionary rule did not apply in this case. We agree and reverse.
On August 18, 2011, Deputy Stephen Dishong of the Brevard County Sheriffs Office submitted an affidavit requesting a search warrant for McGill’s home, alleging that he had reason to believe cannabis was being used or kept on the premises. The affidavit alleged the following pertinent facts: In July 2011, a confidential informant (“Cl”) identified McGill as a mid- to high-level cannabis dealer “who sells multiple pounds of cannabis on a daily routine from his residence.... ” The Cl told Deputy Dishong that McGill left his residence in his personal vehicle and traveled to an unknown location to pick up and transport multiple pounds of cannabis from his cannabis supplier “on a daily routine.” In addition, the Cl had observed approximately fifty pounds of cannabis and ap *347 proximately $20,000 inside McGill’s home. Based on the information obtained from the CI, Deputy Dishong and Agent Beuer began conducting surveillance at McGill’s residence in July 2011. After approximately ten minutes of surveillance, they observed a vehicle arrive at the residence. The occupant of the vehicle entered McGill’s home, where he stayed for about ten minutes; he then exited the residence and left the area. Another deputy conducted a traffic stop of that vehicle and, upon approaching the driver’s door, immediately smelled “the distinct odor of fresh cannabis.” A quarter pound of cannabis was found in the occupant’s waistband. The occupant advised the deputy that he "purchases approximately a quarter potmd to a full pound -of cannabis from- [McGill] on a routine bas[i]s.” The occupant further advised that he “has never known [McGill] to have a shortage of supply of cannabis and believes that he possesses multiple pounds of cannabis in his residence on a routine basis.” The affidavit noted that the information obtained during the traffic stop “further corroborates the reliability of the confidential informant.”
The affidavit further alleged that on August 10, 2011, the Brevard County Sheriffs Office Special Investigation Unit and Deputy Dishong received information from “a confidential source” that a man named Timothy Michael Calderone was going to be at McGill’s residence to purchase approximately two pounds of cannabis. While conducting surveillance of McGill’s house that day, a vehicle was observed arriving at McGill’s residence. The occupant, later determined to be Calderone, went inside for approximately thirty-five minutes and then left. Deputy Mark Myers conducted a traffic stop and smelled cannabis upon approaching the vehicle. A K-9 officer also gave a positive alert as to the presence of drugs. A search of, the vehicle revealed approximately two pounds of cannabis. Although Calderone was unemployed, the deputy found $1,250 in cash on his person, which he believed supported his theory that Calderone was a street-level drug dealer. Once again, the affidavit noted that “this information further corroborates the reliability of the confidential informant.” Lastly, the affidavit set forth McGill’s criminal history, which included a charge for possession of paraphernalia in 2005 and three charges for possession of less than twenty grams of cannabis in 2006, 2007, and 2010.
Based on the facts set forth in the affidavit, the magistrate issued a warrant to search McGill’s home for evidence of possession or sale of cannabis. Upon execution of the search warrant, one to two pounds of cannabis were seized from McGill’s residence, and he was subsequently arrested.
The State charged McGill with one count of possession of a controlled substance with intent to sell or deliver. McGill moved to suppress the evidence seized pursuant to the warrant, arguing, in pertinent part, that the affidavit in support of the warrant did not contain sufficient facts to establish probable cause to issue the warrant.
During a hearing on the motion, the trial court found that it could not consider the statement that the CI. had observed fifty pounds of cannabis and $20,000 in McGill’s home because the affidavit did not provide the date on which the CI made that observation. The trial court explained, “I cannot find that statement reliable. I don’t know if that was this year, last year....” As to the first traffic stop conducted pursuant to the surveillance of McGill’s home, the trial court noted that the car occupant did not specifically state that he obtained the cannabis found on his person from McGill that day. The court acknowledged *348 that the occupant said that he purchases cannabis from McGill on a “routine basis,” but stated, “I don’t know what ‘routine basis’ means. It could mean ... every six months, or routine basis to someone else could mean every three days.” Thus, the trial court concluded that it could not rely on the information obtained during the first traffic stop in making its ruling. The trial court found that the information obtained during the second traffic stop was reliable because the Cl had accurately predicted that Calderone would go to McGill’s home to purchase two pounds of cannabis. The trial court ultimately ruled, however, that the information set forth in the affidavit did not provide probable cause for the issuance of the search warrant and that the good faith exception to the exclusionary rule did not apply. This timely appeal followed.
On appeal, the State argues that the trial court erred in finding that the affidavit did not provide probable cause to believe that- cannabis would be found in McGill’s house. McGill has chosen not to file an answer brief in this appeal.
We review the trial court’s determination of the legal issue of probable cause de novo.[1] Pagan v. State, 830 So.2d 792, 806 (Fla.2002). Limiting our inquiry to “the four corners of the affidavit,” we must determine whether, “based on the totality of the circumstances and a common sense assessment, probable cause is shown.” State v. Paige, 934 So.2d 595, 597 (Fla. 5th DCA 2006). “The magistrate’s decision must be upheld unless there was no substantial basis for concluding that probable cause existed.” State v. Howard, 666 So.2d 592, 594 (Fla. 4th DCA 1996) (citing Schmitt v. State, 563 So.2d 1095, 1098 (Fla. 4th DCA 1990)).
To establish probable cause for issuance of a search warrant, a supporting affidavit must set forth facts establishing two elements: (1) the commission element — that a particular person has committed a crime, and (2) the nexus element — that evidence relevant to the probable criminality is likely to .be located in the place to be searched. State v. Felix, 942 So.2d 5, 9 (Fla. 5th DCA 2006). To satisfy the nexus element, the affidavit must establish the particular time when the illegal activity that is the subject of the warrant was observed. Id. This court elaborated on this rule as follows:
A magistrate is required to know this specific time because the length of time between the activity and the date of issuance bears on whether there is probable cause to believe that the items to be seized will still be found at the place to be searched. The longer the time period, the less likely it is that the items sought to be seized will be found at the place listed in the affidavit. As the time period increases, it is said that the evidence becomes stale. A rule of thumb that seems to be recognized by courts as the standard for staleness is thirty days. There is nothing particularly magical about thirty days, however.... [Whether information is too stale to establish probable cause to support a search warrant is not to be determined solely by the rigid application of a pre-determined time period. Depending on the particularized circumstances as evaluated by an impartial magistrate, an acceptable elapsed time may certainly be more or *349 less than thirty days. A specific lapse of time is not controlling on the issue of staleness and does not invariably render a search warrant stale. We have judges making this determination because it requires an exercise of judgment.
Staleness should be evaluated in light of the particular facts of a given case, the nature of the criminal activity, and the evidence hoped to be found. Information contained in an affidavit in support of a search warrant is not stale if there is sufficient basis to believe, based on a continuing pattern or other good reasons, that the items to be seized are still on the premises. Similarly, items that are consumable,- such as proscribed drugs, for example, may become stale sooner than non-consumable items such as video tapes.
Id. at 9-10 (citations and internal quotation marks omitted). Additionally, when a continuous or ongoing pattern of criminal activity is alleged in the affidavit, staleness becomes less of an issue. Hudson v. State, 368 So.2d 899, 902 (Fla. 3d DCA 1979) (“[T]he staleness issue must be examined more liberally when a continuing pattern of criminal activity is alleged ....”); see also Bastida v. Henderson, 487 F.2d 860, 864 (5th Cir.1973) (“[Wjhere an affidavit recites a mere isolated violation then it is not unreasonable to believe that probable cause quickly dwindles with the passage of time. On the other hand, if an affidavit recites activity indicating protracted or continuous conduct, time is of less significance -”).
Moreover, when a confidential informant provides information to law enforcement that forms the basis for an affidavit for a search warrant, the affidavit must contain either information concerning the informant’s veracity and reliability or sufficient independent corroborating evidence. As explained in Jenkins v. State, 924 So.2d 20, 24 (Fla. 2d DCA 2006):
an informant’s veracity, reliability, and basis of knowledge are all highly relevant in determining the value of his report. But these 'elements should not be understood as entirely separate and independent requirements to be rigidly exacted in every case. A deficiency in one element may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability. The corroboration of major' portions of an informant’s predictions is a salient indicia of reliability. A confidential informant’s veracity, can be established by either the informant’s prior record of reliability or the wealth of detailed, verifiable information given on the occasion in question.
(Citations, internal quotation marks, quotation alteration notations and emphasis omitted).
In the instant case, the trial court correctly noted that the affidavit did not provide the date on which the Cl allegedly observed the cannabis and cash inside McGill’s house; therefore, the Cl’s observation alone would have been insufficient to satisfy the nexus requirement. See Felix, 942 So.2d at 9; Rand v. State, 484 So.2d 1367, 1367-68 (Fla. 2d DCA 1986) (holding affidavit for search warrant insufficient where it did not specify date illegal activity occurred but instead stated only that officer received information from informant within ten days of date of affidavit). However, the affidavit further alleged that both the Cl and the person detained during the first traffic stop had indicated that McGill “routinely” sold cannabis from his house. Thus, “the staleness issue must be examined more liberally” because “a continuing pattern of criminal *350 activity” was alleged. Hudson, 368 So.2d at 902.
In addition, Deputy Dishong independently corroborated the information provided by the Cl by undertaking surveillance of McGill’s home. As a result of that surveillance, officers found cannabis in a vehicle pulled over after leaving McGill’s house, with the occupant of that vehicle also verifying that McGill sold cannabis from his residence on an ongoing and routine basis. The Cl’s reliability was further bolstered by his accurate prediction of another person’s future conduct, i.e., that Calderone would visit McGill’s home on August 10 to purchase two pounds of cannabis.[2] See Illinois v. Gates, 462 U.S. 213, 245, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (holding that probable cause for warrant authorizing search of defendants’ home and automobile was established by anonymous letter indicating that defendants were involved in illegal drug activity and predicting future criminal activities where major portions of the letter’s predictions were independently corroborated by affi-ant); see also Jenkins, 924 So.2d at 24 (“The coi’roboration of major portions of an informant’s predictions is a salient indi-cia of reliability.” (internal quotation marks omitted)). These facts gave the issuing magistrate a “sufficient basis to believe ... that the items to be seized [were] still on the premises.” Felix, 942 So.2d at 9 (quotation and citation omitted); cf. Paige, 934 So.2d at 602 (holding that facts set forth in affidavit established fair probability that drugs would still be found on premises, even though information from anonymous tip and trash pull that revealed evidence of drugs was more than thirty days old; in addition to tip and trash pull, officers conducted surveillance, observed individuals leaving premises with plastic bags and followed other individuals to known drug areas). Lastly, McGill’s history of drug-related offenses, as set forth in the affidavit, provided additional support for issuance of the search warrant. See State v. Gross, 833 So.2d 777, 780 (Fla. 3d DCA 2002) (stating that prior history of drug offenses is one factor that magistrate may consider in determining probable cause to issue warrant); see also Paige, 934 So.2d at 602 (same).
Reviewing all of the facts set forth in the affidavit de novo, we conclude that they were sufficient to provide probable cause to believe that cannabis would be found in McGill’s home. Cf. State v. Siegel, 679 So.2d 1201, 1205-06 (Fla. 5th DCA 1996) (recognizing that magistrate’s issuance of warrant should be upheld where “the various pieces of information mar-shalled in this case and outlined in the affidavit fit neatly together and support the magistrate’s conclusion that there was a fair probability that marijuana would be found”). Accordingly, we find that the trial court erred in granting McGill’s motion to suppress on the basis that the affidavit did not set forth sufficient facts to establish probable cause.
We also note that the trial court appeared to have been misled in its understanding of the good faith exception by unfortunate language in Garcia v. State, 872 So.2d 326, 330 (Fla. 2d DCA 2004), in which the Second District stated that *351 “[w]here ... the supporting affidavit fails to establish probable cause to justify a search, Florida courts refuse to apply the good faith exception.” In Garcia, the officer executing the warrant had also omitted from his affidavit key facts that would have mitigated against issuance of the warrant. Id. at 328-29. It was in this context that the Garcia panel determined that the good faith exception to the warrant requirement did not apply. Id. In cases that do not involve this type of police misconduct, however, the good faith exception can apply to preclude suppression of evidence secured pursuant to an invalid warrant, even where the reviewing court determines that the facts in the affidavit do not demonstrate probable cause. See, e.g., State v. Cook, 972 So.2d 958, 959-60 (Fla. 5th DCA 2007) (explaining that good faith exception applied where “the sole debate ... is over the. existence of probable cause” and where there was no indication that affidavit contained misrepresentations or omitted information); State v. Harris, 629 So.2d 983, 984 (Fla. 5th DCA 1993) (holding that good faith exception applied even though probable cause was lacking in that informant’s reliability was not established and affiant did not corroborate informant’s statement that he observed cocaine in defendant’s house); also cf. Johnson v. State, 872 So.2d 961, 964 (Fla. 4th DCA 2004) (holding good faith exception applied even though affidavit failed to provide specific date on which informant saw contraband at defendant’s house but instead provided date on which affiants obtained information from, informant; explaining that “affidavit in this case is at worst ambiguous as to temporal context but otherwise supplies sufficient facts from which a magistrate would have a substantial basis for concluding that probable cause existed”); Montgomery v. State, 584 So.2d 65, 68 (Fla. 1st DCA 1991) (“The [good faith exception] has been specifically applied in both the federal and Florida courts where the issue has been the staleness of the information upon which the warrant is issued.”); State v. Enstice, 573 So.2d 340, 343 (Fla. 5th DCA 1990) (explaining that “[i]n situations where analysis of a warrant yields a conclusion that it lacks probable cause, the court must then determine whether an affidavit is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable,” and applying good faith exception where deficiencies in affidavit were, “at most, a case of weak drafting, not bad faith.” (citations and quotation marks omitted)).
In general, the good faith exception to the exclusionary rule precludes the suppression of evidence secured pursuant to an invalid warrant when the officer who conducts the search does so in an objectively reasonable reliance upon the validity of the warrant. United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). In determining whether an officer acted in reasonable reliance on the validity of the warrant, courts must consider whether, given the totality of the circumstances, a well-trained officer armed with the information possessed by the officer conducting the search would have believed the warrant to be valid. State v. Sabourin, 39 So.3d 376, 384 (Fla. 1st DCA 2010). The good faith exception does not apply under the following circumstances: (1) if, in issuing the warrant, the magistrate was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) where the issuing magistrate wholly abandoned his judicial role; (3) where the warrant is based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or (4) where a warrant is so *352 facially deficient (i.e., in failing to particularize the place to be searched or the items to be seized) that the executing officer could not reasonably presume it to be valid. Leon, 468 U.S. at 923, 104 S.Ct. 3405.
The rationale behind the .good faith exception is that the exclusionary rule “is designed to deter police misconduct rather than to punish the errors of judges and magistrates.” Id. at 916, 104 S.Ct. 3405. Therefore, when the police act in good faith on a warrant they have no reason to believe is invalid, the deterrent effect of suppressing illegally seized evidence is minimal. Id. at 919-20, 104 S.Ct. 3405; see also State v. Watt, 946 So.2d 108, 110 (Fla. 5th DCA 2007) (“In order to reject the application of the good faith exception in this case, we would need to conclude that an objectively reasonable police officer would have a better understanding of the law of search and seizure and probable cause than did the trial judge who issued the warrant.”).
In this case, there was no allegation that the affidavit contained misrepresentations or omitted material facts, or that the magistrate abandoned his role of neutrality. Moreover, the warrant was not technically deficient — it specified the place to be searched and the items to be seized. Instead, the trial court’s refusal to apply the good faith exception was based solely upon its erroneous conclusion that the supporting affidavit did not establish probable cause. Contrary to the trial court’s analysis in this case, where a trial judge determines that an affidavit did not allege sufficient facts to establish probable cause, the good faith exception applies as long as the affidavit was not so lacking in indicia of probable cause as to render official belief in its validity unreasonable. Given the facts of this case, the trial court should have applied the good faith exception.
We reverse the order granting McGill’s motion to suppress and remand for further proceedings.
REVERSED AND REMANDED.
GRIFFIN, LAWSON and EVANDER, JJ., concur.

. Although we review the trial court’s legal conclusions de novo, the trial court should have applied a more deferential standard when reviewing the magistrate's issuance of the search warrant. See Illinois v. Gates, 462 U.S. 213, 238-39, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (explaining that duty of reviewing court is simply to ensure that magistrate had a substantial basis for concluding that probable cause existed).

. It appears from the affidavit that the "confidential source” who informed law enforcement about Calderone’s planned August 10, 2011 visit to McGill's house is the same Cl who originally informed law enforcement about McGill’s drug activity. And, only one informant was mentioned at the hearing. However, the affidavit is not entirely clear on this point. Even if there was a second informant, the cannabis found in Calderone’s vehicle after his departure from McGill’s house would have further demonstrated the reliability of the first informant as well.