# SIXTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case No. 6D23-310
Lower Tribunal Nos. 17-768CF and 20-626CF

_____

STATE OF FLORIDA,

Appellant,

v.

ALVIN VIANI FREEMAN, III,

Appellee.

_____

Appeal from the Circuit Court for Hendry County.
James D. Sloan, Judge.

January 5, 2024

PER CURIAM.

The State of Florida appeals an order granting Alvin Viani Freeman, III's motion to suppress evidence seized from his home pursuant to a search warrant.[1] We have jurisdiction. *See* Fla. R. App. P. 9.140(c)(1)(B). Because the trial court erred in finding the affidavit supporting the search warrant lacked sufficient facts to establish probable cause, we reverse.

---

[1] This case was transferred from the Second District Court of Appeal to this Court on January 1, 2023.

## Background

On July 16, 2020, Detective Darrin McNeil began his investigation of a shooting that occurred that day. Detective McNeil signed an affidavit for a search warrant on November 19, 2020.

The affidavit[2] alleged that Detective McNeil had probable cause to believe that evidence relating to the crimes of Attempted Homicide and Possession of a Firearm by a Convicted Felon was being kept at Freeman's residence. It described Freeman's residence, provided directions to it, and identified the items to be seized. It identified Freeman as a convicted felon. The affidavit recited Detective McNeil's training and experience as a 12-year law enforcement officer.

The affidavit described the incident and the results of the investigation. Four individuals, including a child, were shot at when their car was leaving an apartment complex. One adult suffered two gunshot wounds and was rushed to the hospital. The vehicle was riddled with twenty-one bullet holes, and twenty-seven spent shell casings were located. Six were 9mm caliber and twenty-one were 7.62.39 caliber, common to an AK47 rifle. Bullet holes were in the door next to where the child was sitting. The victims could not identify the shooters. One victim, however, said that

---

[2] Rather than quote the entire affidavit, we will summarize its most pertinent provisions.

one shooter was holding a "big or long gun," and that she pulled the child down to shield him from the gunfire.

The affidavit explained that law enforcement developed Freeman and Claude Williams as suspects. On August 20, 2020, Detective McNeil interviewed Freeman's uncle, Curtis Robinson, who stated that Freeman gave him an AK47 in the parking lot of a club, and that he took the firearm back to Freeman's residence. On September 14, 2020, a detective obtained a sworn statement from Mary Ellis, whose home was located two houses down from the scene of the shooting. Ellis said that Williams admitted that he had run through her yard and dropped a clip. Williams implicitly admitted he later bought the clip back from Ellis' boyfriend, who separately confirmed the transaction.

The affidavit further explained that Detective McNeil interviewed inmate Ronnie Turner, Jr. on November 6, 2020, after Turner indicated that he had relevant information on McNeil's cases. Turner knew Freeman because they were in the same gang. Turner confirmed that Freeman had firearms at his residence, sometimes storing them under his mobile home on the south side. Turner claimed Freeman kept guns as trophies after they were used to commit crimes. Detective McNeil stated that Turner has given him information in the past that was verified to be true.

The affidavit also discussed three controlled conversations between a confidential informant ("CI") and Williams conducted by law enforcement in

3

November 2020. In two conversations, Williams stated that he, Freeman, and another individual were the shooters. Williams incriminated himself in all three. Like Freeman, both Williams and the other shooter were convicted felons. When asked how he knew that the victims were at the apartment complex, Williams said "we were called."[3] He explained that "[e]veryone in that car was supposed to die," identified the victims, described the firearm used by each perpetrator, and detailed how the shooting happened. Tellingly, Williams stated that he had the "stick" with a 100 round clip and saw one of the victims pull the child's head down. He also said that Freeman shot first and was a gang member.

Detective McNeil verified Freeman's permanent address through probation and driver's license records. He observed Freeman at the subject residence several times, including the day he signed the affidavit. On that date, Detective McNeil submitted the affidavit and requested a warrant for Freeman's residence to search for firearms, live ammunition, firearm parts, spent firearm casings, and electronic devices, including cell phones. The same day, a Hendry County judge reviewed the affidavit and issued a search warrant. The warrant was executed on November 20, 2020, and law enforcement discovered drugs, firearms, ammunition, and cell phones.

---

[3] The trial court apparently overlooked that statement because the order found that the affidavit "sets forth no evidence or allegations" that any suspect used a cell phone.

Freeman filed a motion to suppress and asserted that Detective McNeil's affidavit did not demonstrate probable cause for issuance of the warrant. The trial court held a non-evidentiary hearing on the motion, and the parties agreed that the trial court's review was constrained to the four corners of the affidavit.[4] After the parties presented their arguments, the trial court granted Freeman's motion and concluded that the affidavit did not establish a fair probability that contraband or evidence of a crime would be found at Freeman's residence. In its order, the trial court separately reviewed the affidavit's component parts and found them each insufficient. The State timely appealed.

**Analysis**

When reviewing an order on a motion to suppress, an appellate court defers to a trial court's factual findings but reviews its legal conclusions de novo. *See Pagan v. State*, 830 So. 2d 792, 806 (Fla. 2002); *State v. Hart*, 308 So. 3d 232, 235 (Fla. 5th DCA 2020). Here, our review is de novo because the trial court's decision was solely based on its review of Detective McNeil's affidavit. *See State v. Redhead*, 347 So. 3d 415, 417 (Fla. 5th DCA 2022) (citing *Pagan*, 830 So. 2d at 806); *Hart*, 308 So. 3d at 235.

To establish probable cause, an affidavit for a search warrant must establish two elements: (1) a person has committed a crime; and (2) evidence relevant to the

---

[4] As a result, we express no opinion on the accuracy of the affidavit.

probable criminal conduct is likely to be found at the location to be searched. *See Hart*, 308 So. 3d at 235 (citing *State v. McGill*, 125 So. 3d 343, 348 (Fla. 5th DCA 2013)). "In dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Illinois v. Gates*, 462 U.S. 213, 231 (1983) (quoting *Brinegar v. United States*, 338 U.S. 160, 175 (1949)). Probable cause is a "fluid concept" that turns on probability assessments made in context and is not restricted by "a neat set of legal rules." *Gates* 462 U.S. at 232. The standard of probable cause does not require a prima facie showing of criminal conduct; only the probability of criminal conduct. *See id.* at 235; *Hart*, 308 So. 3d at 235–36.

The Supreme Court has recognized that affidavits "are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleading have no proper place in this area." *Gates*, 462 U.S. at 235 (quoting *United States v. Ventresca*, 380 U.S. 102, 108 (1965)); *see also Hart*, 308 So. 3d at 236. Therefore, the issuing magistrate's duty "is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular

place." *Gates*, 462 U.S. at 238; *see also Willacy v. State*, 967 So. 2d 131, 147 (Fla. 2007); *Hart*, 308 So. 3d at 236.

In *Gates*, which involved an affidavit based in part on a letter from an anonymous informant, the Court declared:

> [A]n informant's "veracity," "reliability" and "basis of knowledge" are all highly relevant in determining the value of his report. . . . [T]hese elements should [not] be understood as entirely separate and independent requirements to be rigidly exacted in every case. . . . [T]hey should be understood simply as closely intertwined issues that may usefully illuminate the commonsense, practical question whether there is "probable cause" to believe that contraband or evidence is located in a particular place.

462 U.S. at 230. Florida courts have recognized that a confidential informant's veracity, reliability and basis of knowledge may be among the relevant factors in analyzing whether an affidavit establishes probable cause, but they are not individually dispositive. *See Pagan*, 830 So. 2d at 806–07; *McGill*, 125 So. 3d at 349.

If a magistrate's probable cause determination is challenged, a trial court should not conduct a de novo review and should instead give the magistrate's determination great deference. *See Gates*, 462 U.S. at 236; *see also Willacy*, 967 So. 2d at 147 ("A magistrate's determination should be accorded a presumption of correctness and not disturbed absent a clear demonstration that the issuing magistrate abused his discretion."); *Hart*, 308 So. 3d at 236 (same). Thus, the trial court's duty "is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]'

7

that probable cause existed." *Gates*, 462 U.S. at 238–39 (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)); *see also Willacy*, 967 So. 2d at 147; *Pagan*, 830 So. 2d at 806; *Hart*, 308 So. 3d at 236; *McGill*, 125 So. 3d at 348.

Here, the trial court did not give the proper deference to the issuing magistrate's determination that Detective McNeil's affidavit established probable cause. The trial court improperly made its own determination de novo. Furthermore, the trial court dissected the affidavit, scrutinized each part in isolation, and found probable cause lacking. That piecemeal analysis ran afoul of the totality-of-the-circumstances approach which mandates trial courts to evaluate affidavits in their entirety. *See Gates*, 462 U.S. at 230–39; *Massachusetts v. Upton*, 466 U.S. 727, 732 (1984); *Willacy*, 967 So. 2d at 147; *Pagan*, 830 So. 2d at 806; *Hart*, 308 So. 3d at 236; *McGill*, 125 So. 3d at 348.

Freeman contends that Detective McNeil's affidavit was deficient because it failed to establish the basis of knowledge, reliability and veracity of Robinson, Turner, and the CI. The applicability and weight of those factors, however, depends on the totality of the circumstances. Simply put, the cases cited in the trial court's order and relied upon by Freeman are inapplicable because the totality of the circumstances in those cases differ from those here.

In sum, Detective McNeil's affidavit provided "a substantial basis for the issuance of the warrant. No single piece of evidence in it is conclusive. But the

8

pieces fit neatly together and, so viewed, support the [m]agistrate's determination that there was" a fair probability that Freeman committed the crimes of Attempted Homicide and Possession of a Firearm by a Convicted Felon, and evidence relating to those crimes was being kept at Freeman's residence. *Upton*, 466 U.S. at 733. Therefore, it was improper for the trial court to grant the motion to suppress.

## Conclusion

We reverse the trial court's order and remand for further proceedings consistent with this opinion.

REVERSED and REMANDED.

TRAVER, C.J., and WOZNIAK, J., concur.
WHITE, J., concurs with opinion.

_____

NOT FINAL UNTIL TIME EXPIRES TO FILE MOTION FOR REHEARING
AND DISPOSITION THEREOF IF TIMELY FILED
_____

WHITE, J., concurring, with opinion.

I join the majority opinion in full. I write to expound on why Freeman's challenges to informants Robinson and Turner, and to the CI, are meritless.

Freeman's argument regarding Robinson is based on the erroneous premise that he cannot be treated like a citizen-informant. In *Bryant v. State*, 901 So. 2d 810 (Fla. 2005), the Florida Supreme Court distinguished an anonymous informant from

a citizen-informant. Bryant was arrested for murder based, in part, on statements from four people. *Id.* at 824-25. One woman was a victim of dating violence by Bryant, one was that victim's sister, and another went with the victim's sister to the police station. *Id.* at 824. Yet another was a man who was in jail for drug charges, had recently learned that his girlfriend was dating Bryant, and had discarded the murder weapon after he found it in his car. *Id.* at 824-25. Bryant argued that all four should be treated like anonymous informants and that their statements needed to be independently verified to establish probable cause. *Id.* at 825.

The *Bryant* court found that none of them were anonymous because all of them were interviewed by the police and identified by name. *Id.* It determined that the informants were "much closer to the definition of citizen-informants 'whose information is at the high end of the tip-reliability scale.'" *Id.* (quoting *State v. Evans*, 692 So. 2d 216, 219 (Fla. 4th DCA 1997)). Although they may have had bad feelings about Bryant, because they did not give statements for pecuniary gain, gave statements voluntarily and were identified, the supreme court found that the informants were "citizen-informants whose statements can be relied upon by police when deciding if probable cause exists." *Bryant*, 901 So. 2d at 825. It dispelled the notion that their statements were irrelevant or unreliable because they were not victims and did not witness the crime. *Id.* at 826.

Under *Bryant*, Robinson is more akin to a citizen-informant than an anonymous one. He voluntarily explained what he knew during his interview by Detective McNeil. The detective was not required to ask Robinson whether he had a motive to lie about his nephew. It was enough that he was identified by name and was not rewarded for his statement. In addition, Robinson invited criminal charges if he provided false information and risked payback by Freeman. *See Redini v. State*, 84 So. 3d 380, 383-84 (Fla. 4th DCA 2012) (accountability for false statements and potential for reprisal by the defendant are among the factors that tend to establish the reliability of citizen-informants (citing *Baptiste v. State*, 995 So. 2d 285, 291 (Fla. 2008))).

With respect to Turner, Detective McNeil swore under oath that Turner had previously provided information to him and all of it proved to be accurate. Furthermore, Turner did not need to identify the firearms he saw or when he saw them. He said that Freeman keeps firearms used in crimes as trophies. *See McGill*, 125 So. 3d at 349 (information is not stale if there is a basis to believe that evidence is still on the premises). Williams put a .38 or .380 revolver in Freeman's hand during the attempted murder. Robinson said he received an AK47 from Freeman which he took to Freeman's home. Freeman is a felon. All information in the affidavit must be considered under the totality-of-the-circumstances standard.

11

As to the CI, it was not necessary to define "controlled conversation" in the affidavit. That is a term of art that law enforcement officers and judges understand to mean a conversation that is contemporaneously monitored by law enforcement without the knowledge of all participants. Here, Detective McNeil and the CI knew, but Williams did not. Detective McNeil personally heard what Williams said during the controlled conversations. Since the CI was not the conduit for what Williams said, the affidavit did not need to establish the basis of knowledge, reliability and veracity of the CI.

Therefore, the parts of Detective McNeil's affidavit relating to Robinson, Turner, and the CI may not be excluded from the probable cause determination. Instead, those parts must be included in the totality-of-the-circumstances analysis required by law.

_____

Ashley Moody, Attorney General, Tallahassee, and Katherine Coombs Cline, Assistant Attorney General, Tampa, for Appellant.

Jason B. Blank, of Haber Blank, LLP, Fort Lauderdale, for Appellee.