KHOUZAM, Judge.
 

 Lila Gonzalez and Francis Yamil Garcia pleaded no contest to several drug-related offenses, reserving the right to appeal the denial of their dispositive motions to suppress. We affirm the trial court’s denial of the motions to suppress as to the cocaine found on Gonzalez during a traffic stop. We reverse the denial of the motions to suppress as to the evidence obtained from the residence of Gonzalez and Garcia pursuant to a search warrant.
 

 Gonzalez and Garcia were each charged with manufacture of cannabis, possession of cannabis, and possession of drug paraphernalia as a result of evidence seized during the search of their home. Gonzalez was also charged with possession of cocaine as a result of evidence obtained during the traffic stop. They filed identical motions to suppress, arguing that the traffic stop of Gonzalez was illegal and that the affidavit for the search warrant was insufficient to establish probable cause. The trial court concluded that the traffic stop was valid. We agree and affirm Gonzalez’s judgment and sentence for possession of cocaine without further comment. The trial court found that the affidavit for the search warrant lacked probable cause but determined that the evidence seized during the execution of the warrant was nevertheless admissible under the good faith exception established in
 
 United States v. Leon,
 
 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). We disagree and find that the good faith exception is inapplicable in this case.
 

 The affidavit stated that there was probable cause to believe that Gonzalez and “others known and unknown” had been committing “offenses involving the transportation, delivery, and possession of ... cocaine.” The affidavit provided in pertinent part:
 

 5. Beginning in October of 2006, an unidentified citizen began writing emails to the City of Tampa message service center concerning narcotics activity at
 
 *228
 
 two local bar/strip clubs. Specifically, “Club Wild” on West Hillsborough Avenue and “Club Envy” on West Kennedy Boulevard. During his emails, he described three subjects who were actively involved. Your affiants began surveillance on one of them and was able to make an arrest and secure a guilty plea. All of the information provided by the citizen proved to be accurate. The messages stopped coming in for awhile, but in March of 2007, he began sending emails again. This time, he specifically named Lila Gonzalez, provided her vehicle descriptions, tag number and phone number in the messages. He also provided information on her new employment. The citizen specifically stated that Lila Gonzalez and her boyfriend, Francis Yamil Garcia[,] were growing marijuana plants in their home and selling cocaine from the residence.
 

 6. TECO records show that electric service at 1323 Grace Street West, was activated by Lila Gonzalez DOB 08/03/81, and Francis Yamil Garcia DOB 02/07/76.
 

 7. The Hillsborough County Property Appraiser’s records show the owner(s) of the house at 1323 Grace Street West, to be Lila Gonzalez and Francis Yamil Garcia.
 

 8. On July 10th, 2007[,] your affiants established surveillance on the house at 1323 Grace Street West at approximately 4:00 [p.m.] We observed the silver Lincoln Navigator bearing Florida tag H16AQR registered to Lila Gonzalez, parked in the drive. At approximately 6:10 [p.m.] Lila Gonzalez exited the front door of the house and entered the driver’s seat of the Lincoln Navigator. She proceeded west on Cypress Street along with our surveillance detail. After she crossed Lois Avenue, she committed a moving violation in front of your affi-ants, to wit; she moved abruptly from the outside-most lane, with no warning or signal, directly into our path, causing Officer Bryant to take an evasive action. She then accelerated and made two more lane changes in traffic without any signal or warning. A traffic stop was initiated. Officer Harrell approached Lila Gonzalez and positively identified her and obtained her driver[’s] license. Officer Harrell explained to Lila Gonzalez why the stop was made. She apologized and stated she was trying to get to work. Officer Harrell asked Lila Gonzalez if she had anything illegal in her truck. She replied that she did. Officer Harrell asked Lila Gonzalez if she would grant permission for an officer to move her vehicle out of the roadway to alleviate the rush hour back up. She granted permission and exited her vehicle. Lila Gonzalez then stated to Officer Harrell that she had powder cocaine in her bra and asked what he wanted her to do. Officer Harrell read
 
 [Miranda]
 
 warnings to Lila Gonzalez and asked her if she would get it out. Lila Gonzalez removed the cocaine and handed it to Officer Harrell. Officer Harrell released the cocaine to Officer Marvin Turner who performed a chemical reagent field test for cocaine on the substance. The test showed positive. Officer Turner weighed the cocaine at 1.0 grams. Officer Harrell asked Lila Gonzalez if there was more cocaine at her residence to which she responded that she wanted a lawyer because she “could see where this was going.” Lila Gonzalez was kept under constant surveillance after leaving her residence. A surveillance team was sent back to the house at 1323 Grace Street West to keep it under surveillance pending the granting of a Search Warrant.
 

 A search of the residence was performed pursuant to the warrant. Officers found
 
 *229
 
 nine marijuana plants, marijuana, a digital scale, a wooden grinder, guns, ammunition, a blower, a generator/power converter, a lamp, and fluorescent fixtures. No cocaine was seized as a result of the search.
 

 A hearing was held on the motions to suppress. Officer Harrell testified that the Tampa Police Department had received a series of anonymous tips regarding forty individuals. He stated that the tips were accurate and had led to the arrest of one individual. The tipster claimed that Gonzalez and Garcia were growing marijuana plants in their house and were selling cocaine from their house. Officer Harrell verified the tipster’s information about Gonzalez’s place of employment, the vehicle that she drove, the vehicle that Garcia drove, and their home address. Officer Bryant also verified that Gonzalez and Garcia took a planned trip to Las Vegas. The officers, however, did not perform any trash pulls, set up any controlled buys, or speak to the couple’s neighbors about whether there were people coming and going from the residence. The couple’s power bill did not show a higher than normal use of electricity. Although the officers drove by the residence to document the vehicles that were there, they did not conduct any surveillance prior to July 10, 2007. Furthermore, the officers did not find any contraband in Gonzalez’s vehicle during the July 10 traffic stop. Officer Harrell admitted that he would not assume that a person in possession of one gram of cocaine was dealing in cocaine.
 

 To determine whether probable cause exists to justify the issuance of a search warrant, the issuing magistrate must determine whether, based on the totality of the circumstances, the information contained within the affidavit establishes a reasonable probability that contraband will be found at a particular place and time.
 
 Pagan v. State,
 
 830 So.2d 792, 806 (Fla.2002). The reviewing court must ensure that the magistrate had a substantial basis for concluding that probable cause existed, and this determination must be made by examining the four corners of the affidavit.
 
 Id.
 
 If the affidavit fails to establish probable cause, the evidence seized pursuant to the warrant will nevertheless be admitted under the good faith exception “when a police officer has acted in an objectively reasonable manner, in objective good faith, and as a reasonably well-trained officer would act in seeking the warrant from a detached and neutral magistrate and thus has reasonably relied upon the warrant in executing a search within the warrant’s terms and scope.”
 
 Pilieci v. State,
 
 991 So.2d 883, 896 (Fla. 2d DCA 2008). The good faith exception is inapplicable, however, “if the officer has acted dishonestly, recklessly, or under circumstances in which an objectively reasonable officer would have known the affidavit or the existing circumstances were insufficient to establish probable cause for the search.”
 
 Id.
 

 Here, the affidavit contained a tip from March 2007 that Gonzalez and Garcia were allegedly growing marijuana and selling cocaine. By the time the search warrant issued, this information was more than three months stale.
 
 See Smith v. State,
 
 438 So.2d 896, 897-98 (Fla. 2d DCA 1983) (noting that as the length of time between the observation of the events establishing probable cause and the date of issuance of the warrant increases, “there is less likelihood that the items sought to be seized will be found on the premises”). The affidavit contained no allegations that anyone actually saw contraband in the couple’s residence and there were no facts from which the magistrate could conclude that contraband was and would still be located in the residence at the time the warrant
 
 *230
 
 issued.
 
 See Rand v. State,
 
 484 So.2d 1367, 1867 (Fla. 2d DCA 1986) (finding affidavit insufficient for failing to allege the specific time or times when contraband was observed on the premises). The officers acknowledged that they did not conduct any investigations to corroborate the tipster’s accusations of illegal drug activity. The only corroboration that was done pertained to readily ascertainable details such as Gonzalez’s place of employment and the type of vehicle that she drove. During the brief period of surveillance on July 10, the officers did not observe any unusual activity at the residence. Moreover, Gonzalez’s possession of one gram of cocaine on her person did not suggest a fair probability that she was selling cocaine from her house.
 
 See State v. Rabb,
 
 920 So.2d 1175, 1187-88 (Fla. 4th DCA 2006) (finding that the possession of books and a video about cannabis cultivation and a small amount of marijuana “simply does not suggest a fair probability of any broader criminal activity, such as the growing of marijuana” in the defendant’s house).
 

 Therefore, we find that the facts as alleged in the affidavit failed to demonstrate a reasonable probability that contraband would be found in the residence at the time the warrant issued. Because an objectively reasonable officer would have known that the affidavit was insufficient to establish probable cause for the search, the good faith exception does not apply.
 
 See Garcia v. State,
 
 872 So.2d 326, 330 (Fla. 2d DCA 2004) (holding that good faith exception did not apply where affidavit failed to establish a nexus between the objects of the search and the residence to be searched).
 

 Accordingly, we reverse the denial of the motions to suppress the evidence obtained as a result of the search warrant, and remand with instructions that the trial court vacate Gonzalez’s and Garcia’s judgments and sentences for manufacture of cannabis, possession of cannabis, and possession of drug paraphernalia. We affirm Gonzalez’s judgment and sentence for possession of cocaine.
 

 Affirmed in part, reversed in part, and remanded for further proceedings.
 

 ALTENBERND and LaROSE, JJ., Concur.