SILBERMAN, Judge.
In this prosecution against Candi L. Loredo (Loredo) for (1) possession of methamphetamine with intent to sell within 1000 feet of a church, (2) possession of drug paraphernalia, and (3) actual or constructive possession of a structure used for trafficking, sale, or manufacture of controlled substances, the State appeals an order suppressing evidence and statements. Because the affidavit in support of the application for search warrant provided probable cause to issue the search warrant based on the correct test of the totality of the circumstances, we reverse the order suppressing evidence and statements and remand for further proceedings.
On April 4, 2011, Detective Hoiler applied for a search warrant, and law enforcement executed the search warrant on the residence of Silvestre[1] and Candi Loredo on April 7, 2011. Loredo filed a motion to suppress, challenging the sufficiency of Hoiler’s affidavit submitted in support of the warrant application. She sought to suppress evidence seized from her residence, evidence seized from the vehicle in which she was riding when law enforcement initially detained her, and any statements she made following her detention. The trial court conducted a joint suppression hearing with the Lore-dos. Because the parties agreed that the sufficiency of the affidavit was a question of law, no testimony was taken at the hearing.
The affidavit provided information from two confidential informants, CS-1 and CS-2. With respect to the first informant, the affiant received information from CS-1 in February 2011 that Silvestre was selling and using methamphetamine at the residence. The affiant stated that CS-1 had conducted multiple hand-to-hand methamphetamine buys, that he knew CS-1 for approximately two months, that CS-1 “provided information on multiple narcotics investigations,” and that CS-1 identified Silvestre.
CS-1 also told the affiant the following information. Silvestre was selling three to four pounds of methamphetamine from the residence every two weeks. CS-1 observed a pound of methamphetamine sixty days prior at the residence. CS-1 purchased one to two ounces from Silvestre within the last thirty days. Two cameras monitored the outside of the residence.
Although the affiant stated that CS-1 had conducted multiple methamphetamine buys, the affidavit did not indicate where the buys had occurred. The affiant had asserted, however, that CS-1 personally observed large quantities of methamphetamine at the residence and personally made a purchase from Silvestre within the last thirty days. Although the affiant stated that CS-1 had provided information on multiple narcotics investigations, there was no statement indicating that the information proved to be accurate. The affiant *1191 did not otherwise address the reliability of the information from CS-1.
With respect to the second informant, on March 29, 2011, CS-2 told the affiant that CS-2 had been selling methamphetamine for Silvestre for approximately the past three months. CS-2 received one-half to one ounce of methamphetamine from Sil-vestre for a price of $900 per ounce. CS-2 had picked up methamphetamine from the residence on multiple occasions. Within the two days before speaking with' the affiant, CS-2 observed three to four pounds of methamphetamine in the residence. And the day before CS-2 spoke with the affiant, Silvestre contacted CS-2 regarding a new shipment of methamphetamine.
CS-2 made two recorded calls to Silves-tre for the purpose of arranging a methamphetamine transaction. The affidavit stated the phone number used and that this was the number where Silvestre was reached, but it did not state how the affi-ant learned that the phone number was associated with Silvestre. Although Sil-vestre purportedly agreed to the transaction, he never showed up for the deal. The explanation given was that surveillance showed that he was at the residence to be searched spending time with his family and that “family activities hindered [Silvestre] from conducting narcotics deals.” Nothing in the affidavit indicated the veracity of CS-2 or that the affiant had any personal knowledge regarding CS-2. But, like CS-1, CS-2 gave specific details and asserted that he or she observed large quantities of methamphetamine in the residence.
The affidavit also stated that law enforcement conducted surveillance of the residence for two weeks and observed a high volume of traffic. The vehicles would stay on average five to ten minutes before leaving. Based on the affiant’s training and experience, he found the high volume of traffic consistent with the sale of narcotics. Finally, the affidavit detailed Silves-tre’s criminal history regarding multiple instances of drug possession.
The trial court found the affidavit did not provide probable cause that the residence contained any narcotics or narcotics-related evidence because the affidavit lacked information on the credibility or reliability of the informants. The State is correct that the trial court improperly applied the rigid two-prong test of Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), which has been replaced with the totality of the circumstances test set forth in Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Under the totality of the circumstances test, the proper analysis is whether, given all the circumstances set forth in the affidavit, “there is a fair probability that contraband or evidence of a crime will be found in a particular place.” Gates, 462 U.S. at 238, 103 S.Ct. 2317. “The affidavit must state that the affiant has personal knowledge of the confidential informant’s veracity or the affidavit must contain sufficient independent corroborating evidence.” Pagan v. State, 830 So.2d 792, 806 (Fla.2002). To assess the reliability of information from an informant, veracity and basis of knowledge are factors to be considered. Id. at 807; Green v. State, 946 So.2d 558, 561 (Fla. 1st DCA 2006).
In considering a motion to suppress evidence derived from the execution of a search warrant, “ ‘a trial court exam-' ines whether the issuing magistrate had a substantial basis for concluding that probable cause existed, and this determination is made by examining the affidavit in its entirety.’ ” Pilieci v. State, 991 So.2d 883, *1192 892 (Fla. 2d DCA 2008) (quoting State v. Vanderhors, 927 So.2d 1011, 1013 (Fla. 2d DCA 2006)). Our review “is once again primarily a legal examination of the evidence in the affidavit to determine whether it establishes probable cause — with a presumption of correctness given to the trial court, which in turn gave great deference to the magistrate.” Id. at 894.
We have reviewed the affidavit based on the correct legal standard of the totality of the circumstances. To justify issuance of a search warrant, the information in the affidavit had to establish a reasonable probability that contraband would be found at the Loredo residence when the warrant was signed on April 4, 2011. See Pagan, 830 So.2d at 806. Here, although the affidavit lacked information about the veracity of either informant, we conclude that the police surveillance of the residence, together with the detailed information regarding drug transactions at the residence and the other information in the affidavit, provided sufficient corroborating evidence to establish probable cause.
Even when there is no evidence of an informant’s reliability, the informant’s first-hand observation and “explicit and detailed description of alleged wrongdoing” entitle the tip to greater weight. See Green, 946 So.2d at 562 (quoting Gates, 462 U.S. at 234, 103 S.Ct. 2317). And, as the State contends, the credibility of one informant can be bolstered by information given by another informant. See id. at 561-62. In addition, the State contends that the two-week surveillance corroborates the information from CS-1 and CS-2. The affiant stated that “[t]he vehicles coming and going from the place to be searched would stay on average (5) five to (10) minutes before leaving.” The affiant, based on his training and experience, found the high volume of traffic consistent with the sale of narcotics.
We recognize that the affidavit failed to explicitly state the dates when the surveillance occurred. “To establish a fair probability that evidence of a crime will be found at the place to be searched, the affidavit must reflect the specific time of the illegal activity that forms the basis for the alleged probable cause.” Barrentine v. State, 107 So.3d 483, 485 (Fla. 2d DCA 2013). However, “[t]he affidavit need not expressly state the exact time of the illegal activity”; rather, the magistrate must be “able to discern the relevant time period from the entirety of the affidavit.” Id. This is crucial information “because there is less of a chance that the evidence to be seized will be found as the time period between the date of the illegal activity and the date of issuance of the warrant increases.” Id.
Affidavits should be considered in their entirety and read in a common-sense manner. Gates, 462 U.S. at 238, 103 S.Ct. 2317; Barrentine, 107 So.3d at 485; State v. Chen, 1 So.3d 1257, 1266 (Fla. 2d DCA 2009). Based on a reading of the affidavit as a whole, the surveillance would have begun sometime after the detective spoke with CS-1 in February 2011. And the affidavit indicates that on the date of the failed drug transaction, March 29, 2011, surveillance was being conducted on the premises. Thus, surveillance was conducted less than a week before the warrant was signed. This would be part of the two-week period of surveillance referred to previously in the affidavit. Therefore, the surveillance showing activity consistent with drug traffic corroborates the information provided by CS-1 and CS-2. The surveillance, along with Silvestre’s criminal history, corroborates the detailed information from two different informants to support a reasonable probability that contraband would be present when the search warrant was executed.
*1193 We conclude, based on the totality of the circumstances, that the affidavit established a reasonable probability that contraband would be found at the Loredo residence on April 4, 2011. Therefore, we reverse the order suppressing evidence and remand for further proceedings.[2]
Reversed and remanded.
ALTENBERND and LaROSE, JJ., Concur.

. Silvestre’s name is misspelled as Silbestre in the affidavit for search warrant. Silvestre was the codefendant in the trial court, and his convictions and sentences are the subject of appeal number 2D12-3649.

. On remand Loredo may argue the other issue raised at the suppression hearing regarding the stop of her vehicle in light of Bailey v. United States, - U.S. -, 133 S.Ct. 1031, 185 L.Ed.2d 19 (2013), which the Supreme Court issued after the suppression hearing occurred in this case.