NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

BLAKE MITCHELL SANCHEZ, )
)
Appellant, )
)
v. ) Case No. 2D13-114
)
STATE OF FLORIDA, )
)
Appellee. )
_____)

Opinion filed July 23, 2014.

Appeal from the Circuit Court for Polk
County; Roger A. Alcott, Judge.

Keith A. Peterson of Law Offices of
Peterson, P.A., Mulberry, for Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Jonathan P. Hurley,
Assistant Attorney General, Tampa, for
Appellee.

SILBERMAN, Judge.

At issue in this prosecution for possession of methamphetamine and

possession of drug paraphernalia is whether probable cause existed to support

issuance of a search warrant on Blake Mitchell Sanchez's residence. Sanchez appeals

his judgment and sentence for those crimes and contends that the trial court erred in

denying his motion to suppress because the affidavit was insufficient to establish

probable cause to issue the search warrant and that the good faith exception is inapplicable. Notably, at the suppression hearing, defense counsel asked the detective who prepared the affidavit the following: "What did you corroborate to put a connection, a nexus, between a tip and actually drug sales going on at the location?" The detective responded, "Nothing." Our review of the record supports the detective's candid admission, and we agree with Sanchez that probable cause was lacking and that the good faith exception does not apply. Therefore, we reverse his judgment and sentence and remand for further proceedings.

On September 6, 2011, Detective Gaskin submitted a sworn application for search warrant. The affidavit detailed Detective Gaskin's experience regarding narcotics investigations and stated that he had received an anonymous tip through Crime Stoppers on August 24, 2011. The tip stated that a white female was selling methamphetamine from a particular residence in Winter Haven. The tip provided a vehicle description that included a license plate number. The license plate was registered to Tara Hilliard Sanchez, a white female. The detective observed the vehicle parked in the driveway of the residence on August 26, 2011.

Detective Gaskin discovered that Tara Hilliard Sanchez and Blake Sanchez listed the address of that residence as their residence on their Florida identification cards. Criminal history checks revealed that Ms. Sanchez had arrests for possession of drug paraphernalia in 2003 and for trafficking in methamphetamine in 2000, as well as other narcotics charges. Sanchez had an extensive record, and the affidavit specifically mentioned narcotics charges in April 2010, theft charges in January 2010, resisting charges in March 2009, and counterfeiting charges in 2007.

Detective Gaskin's investigation also revealed that search warrants had been served on the residence in 2003 and 2006. The 2003 search revealed ten grams of methamphetamine packaged in baggies and drug paraphernalia. The 2006 search revealed drug paraphernalia, including a scale that tested positive for methamphetamine.

The affidavit described an interview that Detective Leonard conducted on March 28, 2011, with a female who had been arrested. The female stated that Tara Sanchez was distributing methamphetamine from her residence and described the area of the residence. The female believed that Ms. Sanchez was capable of selling ounces of methamphetamine. However, the female stated that she had never personally purchased methamphetamine from Ms. Sanchez but knew people who had.

As the result of a records search, Detective Gaskin discovered an incident that took place on July 18, 2011. Detective Esteve saw a vehicle parked in front of the Sanchez residence. He later conducted a traffic stop of the vehicle and arrested the driver. It was noted that all three occupants of the vehicle had criminal histories that included drug offenses. The driver, Stephanie Wells, was arrested for possession of methamphetamine and drug paraphernalia. Wells stated that she had been at the residence to sell digital cameras to Tara Sanchez who often purchased electronics.

The affidavit also related that Detective Gaskin conducted surveillance on the residence on August 26, 2011. On that date he observed a white male that appeared to be Sanchez standing in the front yard. Detective Gaskin observed a purple PT Cruiser pull into the driveway. The vehicle remained in the driveway for just over two minutes and left. Detective Gaskin did not see anyone from the residence make

- 3 -

contact with anyone in the vehicle. The PT Cruiser traveled half a block east and stopped to pick up a white male who got in the front passenger seat. Law enforcement followed the vehicle and eventually stopped it for a traffic violation. The front seat passenger was arrested for possession of methamphetamine and drug paraphernalia. The driver was released.

A criminal history check showed that the driver of the PT Cruiser had an extensive criminal history that included marijuana charges in 2010 and 2011. The passenger had arrests only for criminal traffic violations.

The affidavit then stated the above information "constitutes an ongoing pattern of criminal activity that is continuous and has been for a period of time." The affiant believed, based on these facts and his training and experience, that Tara and Blake Sanchez and "other unknown subject(s) are actively utilizing the place to [be] searched for the distribution of illegal narcotics and that evidence proving this will be located at the place to be searched as a result of this search warrant."

The magistrate authorized the warrant on September 6, 2011, and law enforcement executed the warrant on September 7, 2011. The search revealed methamphetamine and drug paraphernalia in the residence. Sanchez filed a motion to suppress evidence, and the trial court conducted a hearing on the motion at which Detective Gaskin testified.

During his testimony, Detective Gaskin clarified the facts regarding the incident on July 18, 2011, in which Detective Esteve observed a vehicle parked at the residence. When Detective Esteve subsequently stopped the driver, Stephanie Wells, for a traffic violation and possession of methamphetamine, Wells admitted that the

- 4 -

drugs in her possession were from her usage the prior evening. The affidavit made no mention of the fact that Wells stated that the drug usage was from the prior evening. In addition, the affidavit provides that Wells said she was at the residence to sell digital cameras to Tara Sanchez. Detective Gaskin testified at the suppression hearing that Detective Esteve actually found cameras on Wells' person; this fact was not in the affidavit. Detective Gaskin also acknowledged at the suppression hearing that Wells was arrested for a residual amount of methamphetamine. The fact that the arrest was for a residual amount was not contained in the affidavit.

Detective Gaskin also testified that he did a lot of rolling surveillance (drive-bys) and some stationary surveillance of the residence. He observed no hand-to-hand sales and no high traffic patterns commonly associated with drug sales. He had been unable to conduct any trash pulls at the residence and did not use a confidential informant as part of the investigation. He also admitted that the anonymous tip contained some details that were incorrect. Defense counsel asked, "What did you corroborate to put a connection, a nexus, between a tip and actually drug sales going on at the location?" The detective responded, "Nothing."

The detective relied on the drug histories and search warrants executed in 2003 and 2006, the female that spoke with Detective Leonard in March 2011, the arrest of Wells who had methamphetamine (of a residual amount) in her vehicle in July 2011, and his observation of the PT Cruiser in the driveway and subsequent arrest of the passenger. Detective Gaskin admitted that he believed there was a pattern of criminal activity based on historical facts and "[n]othing current" except the PT Cruiser stop.

In denying the motion to suppress, the trial court found that the application for search warrant set forth probable cause and that there was "no evidence that the affiant acted in willful disregard of the truth." The trial court went on to state that the officer was acting in good faith when he executed the warrant and that "the anonymous tip was supported by further investigation that disclosed the persons residing in the house had an on-going history of drug law violations and the house was frequented by drug users." The court concluded that the police "were acting with a warrant supported by facts and circumstances."

On the appeal of a ruling regarding probable cause to support a search warrant, our "review consists of 'a legal examination of the evidence in the affidavit to determine whether it establishes probable cause—with a presumption of correctness given to the trial court, which in turn gave great deference to the magistrate.' " Barrentine v. State, 107 So. 3d 483, 484 (Fla. 2d DCA 2013) (quoting Pilieci v. State, 991 So. 2d 883, 894 (Fla. 2d DCA 2008)). To establish probable cause, a supporting affidavit for issuance of a search warrant "must satisfy two elements: first, that a particular person has committed a crime—the commission element, and second, that evidence relevant to the probable criminality is likely located at the place to be searched—the nexus element." Burnett v. State, 848 So. 2d 1170, 1173 (Fla. 2d DCA 2003); see also State v. McGill, 125 So. 3d 343, 348 (Fla. 5th DCA 2013). "To satisfy the nexus element, the affidavit must establish the particular time when the illegal activity that is the subject of the warrant was observed." McGill, 125 So. 3d at 348.

The exact time of the illegal activity need not be stated expressly in the affidavit; if the magistrate can determine the relevant time period from the affidavit as a

- 6 -

whole, it is sufficient. Barrentine, 107 So. 3d at 485. The time of the illegal activity is important because as the time between the illegal activity and the issuance of the warrant increases, it becomes less likely that the evidence to be seized will be found. Id.; see also McGill, 125 So. 3d at 349 (recognizing that information concerning consumable items like narcotics may become stale sooner than for nonconsumable items like videotapes). In Barrentine, this court determined that neighbors' reports of animal cruelty and fighting "from three years previous were obviously too remote in time to establish probable cause." 107 So. 3d at 485.

Here, an anonymous tip received on August 24, 2011, asserted that a white female was selling methamphetamine from the residence at issue. The tip gave no details regarding when sales had been made and did not state that the tipster had observed any drugs in the residence. The affidavit shows no nexus between the tip and actual drug sales at the residence. Detective Gaskin admitted at the hearing that he had "nothing current" as a nexus to connect the anonymous tip and drug sales going on at the residence, except the stop of the PT Cruiser.

But the PT Cruiser stop did not show that a drug sale had taken place at the residence when the PT Cruiser was briefly parked in the driveway on August 26, 2011. Detective Gaskin did not see any interaction between any occupant of the PT Cruiser and anyone at the residence. The detective saw no conversation or hand-to-hand exchange. After the PT Cruiser left the residence, the driver stopped down the street and a man got in the front passenger seat. This passenger was later arrested for methamphetamine possession, but nothing connected him to the residence. The driver was not arrested.

- 7 -

An earlier event on July 18, 2011, also did not connect drugs to the residence. Wells' vehicle had been parked in front of the residence. Detective Esteve later conducted a traffic stop and arrested her for possession of methamphetamine, but she told the officer she was at the residence to sell cameras to Tara Sanchez. At the suppression hearing, Detective Gaskin admitted that Wells told the officer the drugs were from her previous evening's usage and admitted that Wells was in possession of only a residual amount of methamphetamine. Thus, it does not appear that Wells had just engaged in a drug transaction when she was at the residence.

The trial court found in its order denying suppression that "the anonymous tip was supported by further investigation that disclosed the persons residing in the house had an on-going history of drug law violations and the house was frequented by drug users." This does nothing to corroborate that drugs sales were currently occurring at the residence and that drugs would likely be found at the residence. Although the criminal history of a suspect can be a factor when determining whether probable cause exists, see State v. Gross, 833 So. 2d 777, 780 (Fla. 3d DCA 2002), it does not show current drug sales were taking place at the residence when there was otherwise no such evidence. Cf. McGill, 125 So. 3d at 350 (stating that the defendant's history of drug-related offenses provided additional support for the search warrant). And even the tip here failed to state when any drug sales had occurred.

In contrast to the present case, in Gross the police conducted a trash pull at the residence that revealed drugs and paraphernalia commonly used for the sale of drugs. 833 So. 2d at 780. In addition to the defendant's prior criminal history of drug

sales several months prior, the evidence from the trash pull corroborated the tip that drug sales were being made at the residence. Id.

Detective Gaskin relied upon prior drug histories that showed Sanchez's most recent arrest on narcotics charges to be in April 2010 and Tara Sanchez's most recent drug related arrest to be in 2003. The detective also relied on two prior searches of the residence, one that occurred in 2006 and one that occurred in 2003—more than five years and eight years, respectively, before the anonymous tip was received and the warrant issued. The trial court relied on this criminal history to corroborate the anonymous tip.

But nothing in the investigation showed that evidence of current drug sales was likely to be found in the residence. Detective Gaskin had no evidence of a drug sale taking place at the residence within a reasonable time prior to the issuance of the warrant. See Pilieci, 991 So. 2d at 891 (explaining that thirty days is a "rule of thumb" to determine staleness but that each case must be determined on its own circumstances). Although the detective relied on the incident of the purple PT Cruiser parked in the driveway, the passenger later arrested was never seen at the residence and no actual sale or hand-to-hand transaction was ever observed at the residence.

Based on the totality of the circumstances, the affidavit did not establish a fair probability that evidence of methamphetamine sales would be found at the residence when the warrant was signed on September 6, 2011. See Barrentine, 107 So. 3d at 484; see also Pilieci, 991 So. 2d at 894 ("At best, the affidavit establishes a slight possibility and not a 'fair probability' of finding drugs almost a month after a single sale transaction."); Gonzalez v. State, 38 So. 3d 226, 229-230 (Fla. 2d DCA 2010)

- 9 -

("The affidavit contained no allegations that anyone actually saw contraband in the couple's residence and there were no facts from which the magistrate could conclude that contraband was and would still be located in the residence at the time the warrant issued.").

The State argues that the record supports the trial court's finding that Detective Gaskin was acting in good faith and that it is appropriate to apply the good faith exception set forth in United States v. Leon, 468 U.S. 897 (1984). The trial court stated in its order that Detective Gaskin was acting in good faith, but the trial court did not address the omissions in the affidavit, particularly regarding the July 2011 incident in which Wells was found in possession of methamphetamine after having visited the residence. The affidavit failed to reflect that Wells told the officer the methamphetamine was from her use the prior evening and that it was a residual amount.

However, even without considering these omissions from the affidavit, the affidavit shows no nexus between the object of the search—evidence of the sale of methamphetamine—and the residence. See Garcia v. State, 872 So. 2d 326, 330 (Fla. 2d DCA 2004) (stating that the affidavit failed to establish a nexus between cocaine and the residence and that "[e]ven if we overlook the omissions and errors within the affidavit, the determination that cocaine was located within the residence was necessarily based on speculation, rather than a fair probability"). A significant focus of the affidavit here was on old criminal history, and nothing showed an actual drug sale at the residence to corroborate the anonymous tip that did not specify a time frame. Thus, we conclude that "an objectively reasonable officer would have known that the affidavit was insufficient to establish probable cause for the search." Gonzalez, 38 So. 3d at

230.  Therefore, the good faith exception is inapplicable.  Id.; see also Mesa v. State, 77 So. 3d 218, 223 (Fla. 4th DCA 2011) (stating that Garcia, 872 So. 2d at 330, "held that, where there is a lack of facts, a real paucity of facts, a very weak case, the law is well established that where 'the supporting affidavit fails to establish probable cause to justify a search, Florida courts refuse to apply the good faith exception' ").

Finally, we address the dissent's observations.  While the dissent correctly acknowledges that the issue of probable cause turns on the facts stated in the affidavit, the dissent emphasizes Sanchez's criminal history and three additional incidents.  But the dissent ignores the staleness of the historical information and, perhaps more importantly, the lack of a connection between the incidents and the likelihood that evidence of drug sales might be found at the residence at the time of execution of the search warrant.

The first incident, the interview with a female in March 2011, over five months before the warrant was obtained, provides no clue as to when unidentified "people" had purchased drugs from the residence.  The second incident, nearly two months before the warrant was obtained, involved a traffic stop of a vehicle that had been at the residence.  Nothing in the affidavit connected the residence and the drugs that were found on the driver.  Later testimony established that the drugs were only a residual amount rather than anything purchased at the residence.  The third incident, involving the PT Cruiser, did not establish contact between anyone in the residence and any occupant of the vehicle.  In fact, the passenger who was in the vehicle and found to have drugs was picked up after the vehicle left the residence.  Nothing connected him with the residence or a drug sale at the residence.

- 11 -

The dissent suggests that this "smoke" was sufficient to establish probable cause. But even if the proverbial smoke suggested a fire is burning somewhere, it simply did not establish what is critical to the requisite legal analysis: did the affidavit establish a fair probability that execution of the warrant would result in the discovery of evidence of drug sales at the residence? Speculation and a mere possibility based on "smoke" do not substitute for concrete facts that would establish probable cause for the search of the residence.

Accordingly, the trial court should have granted the motion to suppress, and we reverse Sanchez's judgment and sentence and remand for further proceedings.

Reversed and remanded.

WALLACE, J., Concurs.
BLACK, J., Dissents with opinion.


BLACK, Judge, Dissenting.

I respectfully dissent. The majority opinion relies heavily on Detective Gaskin's testimony from the suppression hearing conducted in July 2012, some ten months after he submitted his sworn application for search warrant which was granted by Polk County Circuit Judge Dale Durrance. Detective Gaskin's uneven testimony at the hearing is not reflective of the sufficiency of the affidavit placed before the judge nearly a year earlier, and it is the sufficiency of the affidavit which is key to the probable cause determination. See State v. Loredo, 129 3d 1188, 1191-92 (Fla. 2d DCA 2014); State v. Exantus, 59 So. 3d 359, 361-62 (Fla. 2d DCA 2011); Pilieci v. State, 991 So. 2d 883, 892 (Fla. 2d DCA 2008).

In determining whether probable cause existed the issuing judge was to consider only the facts stated in the affidavit. Pilieci, 991 So. 2d at 889. Clearly, the judge could not consider unknown information or omissions, and this is not a case involving omissions which would have defeated probable cause where such omissions " 'resulted from intentional or reckless police conduct that amount[ed] to deception.' " Id. at 893 (quoting Johnson v. State, 660 So. 2d 648, 656 (Fla. 1995)). Further, " '[o]n a motion to suppress the fruits of a search in accordance with a warrant, a trial court examines whether the issuing [judge] had a substantial basis for concluding that probable cause existed, and this determination is made by examining the affidavit in its entirety.' " Id. at 892 (quoting State v. Vanderhors, 927 So. 2d 1011, 1013 (Fla. 2d DCA 2006)). Concentrating on the affidavit's four corners leads to the all but inescapable conclusions that probable cause existed for yet another search of the subject premises and a fair probability that said search would result in yet another seizure of illicit narcotics.

The affidavit at issue revealed that Blake Sanchez was the subject of more than forty prior charges, the most recent being for narcotics in April 2010. Further, the affidavit noted that Sanchez was arrested in both 2003 and 2006 following the execution of search warrants on the same residence at issue in this case. In 2003, 2.8 grams of methamphetamine and numerous pieces of drug paraphernalia were found in Sanchez's bedroom. In 2006, a scale testing positive for methamphetamine was found, resulting in charges being filed against him.

Although the majority opinion fairly recounts the anonymous tip that began the latest investigation at 2020 9th Street NW, much of the remainder of the opinion is

devoted to attempting to explain away the heavy "smoke"—the probable cause—further supported by three corroborating incidents recounted in detail in the affidavit.

The first of these was an interview conducted on March 28, 2011, with a female who, following her arrest, stated that Tara Sanchez was distributing methamphetamine from her residence. The majority's criticism is that this female had not personally purchased the drugs but only "knew people who had." However she came to know that information, it was part of the allegations and circumstances of the affidavit.

The second corroborating incident was the arrest of Stephanie Wells in July 2011. She was found in possession of a residual amount of methamphetamine. The affidavit points out that Ms. Wells has a criminal history dating back to 1998, including multiple arrests for possession of drug paraphernalia, possession of marijuana, and possession of methamphetamine charges for felony criminal mischief; as well as charges for resisting arrest without violence, passing worthless checks, filing a false police report, and domestic violence. The majority opinion discounts Ms. Wells' arrest because she had only a "residual" amount of methamphetamine and because she claimed to be merely trying to sell cameras at the subject residence and was not there to purchase drugs.

The third corroborating incident was the observation and subsequent stop of the PT Cruiser in August 2011. Although a passenger in the PT Cruiser was found in possession of methamphetamine, the majority dismisses this arrest because the officer did not actually witness a drug transaction taking place at the subject premises from

which the vehicle had recently departed and because the drugs were found on the passenger and not the driver.

Each of the aforementioned incidents occurred in 2011, within months of the search in question. Taken alone, the corroborating incidents might possibly be discounted. However, the issuing judge must make a common-sense decision whether given the circumstances set forth in the affidavit—and only those circumstances—there is a fair probability that evidence of a crime will be found in a particular place. Willacy v. State, 967 So. 2d 131, 147 (Fla. 2007); Pilieci, 991 So. 2d at 889 (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)); accord Williams v. State, 130 So. 3d 757, 760 (Fla. 2d DCA 2014). By focusing on the suppression hearing and what was left out of the affidavit, I believe the majority opinion incorrectly discounts all that was in the affidavit— the only information the issuing judge had to consider.

"[T]he appellate court needs to be entirely persuaded that both the trial court and the magistrate made an error when applying the law in deciding that the content of the affidavit established probable cause to search the [property]." Pilieci, 991 So. 2d at 894. I am not persuaded. Consider what the issuing judge had before him in making the probable cause determination:

First, he knew that the same premises, occupied by the same people, had been searched twice previously, with each search resulting in narcotics charges. Second, he knew of the more than forty prior charges levied against Blake Sanchez, the most recent of which was in 2010. Third, he knew of the anonymous tip, which included an accurate license plate number. Fourth, he knew of three corroborating drug-related

- 15 -

incidents involving the premises, all of which occurred in the months leading up to Detective Gaskin's request for a warrant.

Given this information, Judge Durrance would have been remiss in not finding sufficient probable cause to issue a search warrant. I would affirm the circuit court's denial of the motion to suppress.