NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

ANTONIO CASTRO, JR.,                )
                                    )
         Appellant,                 )
                                    )
v.                                  )     Case No. 2D16-1466
                                    )
STATE OF FLORIDA,                   )
                                    )
         Appellee.                  )
_____)

Opinion filed July 14, 2017.

Appeal from the Circuit Court for Polk
County; Wayne M. Durden, Judge.

Howard L. Dimmig, II, Public Defender,
and William L. Sharwell, Assistant Public
Defender, Bartow, for Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Helene S. Parnes,
Senior Assistant Attorney General, Tampa,
for Appellee.


SILBERMAN, Judge.

         Antonio Castro, Jr., appeals his convictions for trafficking in amphetamine,

possession of cocaine, and possession of drug paraphernalia for which he received

concurrent sentences of three years in prison on the felonies and one year in prison on

the misdemeanor.  He entered an open plea and reserved for appellate review the

denial of his dispositive motion to suppress the evidence found during the execution of a search warrant. Because probable cause is lacking and the good faith exception is inapplicable under the circumstances, we reverse the convictions and sentences and remand for Castro's discharge.

Castro moved to suppress the evidence discovered during a search of his residence that was conducted pursuant to a search warrant. He argued a lack of probable cause and that information in the affidavit contained stale facts. A hearing was held on the motion at which both parties agreed that they were relying on the information within the four corners of the affidavit, along with the return which showed the date of execution of the warrant. The prosecutor stated that she would not be presenting testimony. The trial court mentioned that sometimes testimony is presented to point out what was omitted from the warrant application, and the prosecutor indicated that the State would not be doing so in this case. The defense agreed with the trial court that the motion dealt with legal argument on what was within the four corners of the affidavit. Thus, we look to the affidavit in detail.

The affiant first described his experience as a narcotics detective. He then described two narcotics sales by an individual named Adrian Vela-Uribe made to an undercover detective, as follows:

> On 10/09/13, [the undercover detective] met with Adrian Vela-Uribe at Murphy Gas Station located at 36115 Highway 27, Haines City, Polk County, Florida, 33844. Vela-Uribe met with [the undercover detective] to sell two (2) eight balls of powder cocaine (3.5 grams each) for $270.00 U.S. Currency. While at the meet location, [the undercover detective] provided Vela-Uribe with $270.00 U.S. Currency of investigative funds and was provided two (2) plastic baggies of suspected powder cocaine. [The undercover detective] advised Vela-Uribe that he was interested in

purchasing a half ounce (14 grams) of methamphetamine. Vela-Uribe attempted to make several phone calls to his supplier, but was unsuccessful with making contact with them. Vela-Uribe advised [the undercover detective] that he would contact him a little later if he can get the methamphetamine.

Surveillance units kept constant view of Vela-Uribe who was traveling in a 2002 silver in color Chevrolet, bearing Florida tag number 946-PZG. During surveillance, Vela-Uribe was observed arriving at two (2) residences in the Haines City area. While at the second residence, Vela-Uribe contacted [the undercover detective], via telephone call, advising him that he was on his way to pick up the methamphetamine and it would take him approximately twenty (20) minutes. Surveillance units followed Vela-Uribe directly to the area of South 10th Street/Hinson Avenue, Haines City, but lost sight of the vehicle for approximately three to four (3-4) minutes, which is approximately 0.25 miles away from 1010 Ledwith Avenue East, Haines City (Residence to be searched). Surveillance units relocated the Chevrolet in the area of South 10th Street/Hinson Avenue. Vela-Uribe contacted [the undercover detective] advising him that he had the methamphetamine. Constant Surveillance was conducted on the vehicle, which was occupied by Vela-Uribe. Vela-Uribe arrived at the Murphy Gas Station. Vela-Uribe was observed exiting the Chevrolet and making contact with [the undercover detective]. Vela-Uribe provided [the undercover detective] with a baggie of suspected methamphetamine and [the undercover detective] provided Vela-Uribe with $660.00 U.S. Currency. Vela-Uribe was observed entering the Chevrolet and leaving the area. Surveillance units kept a constant view of the Chevrolet as it drove to 1010 Ledwith Avenue, Haines City (place to be searched) after the deal. The Chevrolet was observed parked in front of the place to be searched. Vela-Uribe was observed running up to the front door of the residence. Surveillance units were unable to determine if Vela-Uribe entered the residence at that time. Approximately two (2) minutes later Vela-Uribe was observed entering the Chevrolet and leaving the area.

(Emphasis added.) The affiant then stated that the suspected powder cocaine and methamphetamine both field-tested positive. The total amount of methamphetamine recovered was approximately fourteen grams.

The affiant then described an anonymous tip or tips as follows:

Your affiant has received anonymous tips that Antonio Castro Jr. "Tony" is concealing methamphetamine in his home. The tip further states that Castro's supplier is a main distributor that sells pounds of methamphetamine. The tip also states that there are scales in the residence and he sells methamphetamine in ounces.

The affiant stated that Castro has had four arrests dating back to 1999 but did not state that any of the arrests were for drug offenses and did not otherwise describe those arrests. Although the affiant stated that the residence was owned by Karelyn Rios, the affiant further stated that Castro listed the address to be searched on his driver's license and that during the course of the investigation Castro had "been observed at this location several times." Based on this information, the warrant was issued on October 29, 2013, and was executed on November 5, 2013.

In denying the motion to suppress, the trial court determined that the anonymous tip described was insufficient by itself to establish probable cause and that the undercover buy of methamphetamine at the gas station contained gaps in surveillance. The court found that law enforcement did not observe Vela-Uribe at the residence before the transaction and did not see him enter the residence or make contact with anyone at the residence after the transaction. But based on the totality of circumstances, the trial court found "a factual nexus between the seller and drugs and the residence searched" and that "[t]he nexus is barely but slightly corroborated [by] the vague tip information" that connected the residence to drugs and Castro. The court

- 4 -

determined that although "the information is not as strong as it might have been, there is nonetheless sufficient information" in the affidavit "upon which the issuing magistrate could conclude there was a sufficient nexus between illegal narcotics and the residence searched." The trial court also found that there was no record basis to support a finding that law enforcement made omissions with intent to deceive or with reckless disregard for the truth. Further, the trial court concluded that the information supporting probable cause was not stale.

In evaluating a motion to suppress involving a search warrant, a trial court examines the affidavit to determine if the issuing magistrate had a substantial basis to conclude that probable cause existed. Pilieci v. State, 991 So. 2d 883, 892 (Fla. 2d DCA 2008). "This court's review consists of 'a legal examination of the evidence in the affidavit to determine whether it establishes probable cause—with a presumption of correctness given to the trial court, which in turn gave great deference to the magistrate.'" Barrentine v. State, 107 So. 3d 483, 484 (Fla. 2d DCA 2013) (quoting Pilieci, 991 So. 2d at 894).

> To establish probable cause, a supporting affidavit for issuance of a search warrant "must satisfy two elements: first, that a particular person has committed a crime—the commission element, and second, that evidence relevant to the probable criminality is likely located at the place to be searched—the nexus element."

Sanchez v. State, 141 So. 3d 1281, 1284-85 (Fla. 2d DCA 2014) (quoting Burnett v. State, 848 So. 2d 1170, 1173 (Fla. 2d DCA 2003)); see also State v. McGill, 125 So. 3d 343, 348 (Fla. 5th DCA 2013). "To satisfy the nexus element, the affidavit must establish the particular time when the illegal activity that is the subject of the warrant was observed." McGill, 125 So. 3d at 348. It is sufficient if the time period can be

established from the affidavit as a whole. <u>Sanchez</u>, 141 So. 3d at 1285; <u>Barrentine</u>, 107 So. 3d at 485.

The affidavit showed that Vela-Uribe had committed a crime by selling the methamphetamine to the undercover officer. But the affidavit failed to provide information indicating a "fair probability" of finding methamphetamine at Castro's residence. <u>Pilieci</u>, 991 So. 2d at 894 ("At best, the affidavit establishes a slight possibility and not a 'fair probability' of finding drugs almost a month after a single sale transaction."); <u>see also</u> <u>Gonzalez v. State</u>, 38 So. 3d 226, 229-30 (Fla. 2d DCA 2010) ("The affidavit contained no allegations that anyone actually saw contraband in the couple's residence and there were no facts from which the magistrate could conclude that contraband was and would still be located in the residence at the time the warrant issued."). Here, the nexus to Castro's residence was lacking.

The affiant provided vague information received from an anonymous tipster. The only information provided concerning Castro's residence is that Castro "is concealing methamphetamine in his home" and "that there are scales in the residence." The tipster also relayed that Castro "sells methamphetamine in ounces." The affidavit did not indicate where the sales took place. Nothing indicates a time frame for when methamphetamine was in the home, the quantity of drugs, or where in the home they would be found. Nothing indicates if the anonymous tipster even personally observed the drugs or had ever been in the residence. The tip does not contain any prediction of future behavior. And there is no information as to the veracity or reliability of the tipster.

In considering the totality of the circumstances, when evidence of the tipster's veracity and reliability is lacking, there must be sufficient independent

corroborating evidence. See State v. Loredo, 129 So. 3d 1188, 1191 (Fla. 2d DCA 2014); McGill, 125 So. 3d at 349. For instance, in Loredo the affidavit failed to include information regarding the veracity of either of the two informants. 129 So. 3d at 1192. But the two informants gave specific details and stated that they had seen large quantities of methamphetamine in the residence to be searched. Id. at 1191. This court determined "that the police surveillance of the residence, together with the detailed information regarding drug transactions at the residence and the other information in the affidavit," which included the defendant's history of drug arrests, "provided sufficient corroborating evidence to establish probable cause." Id. at 1192.

Here, it appears that the affiant attempted to corroborate the anonymous tip with the sale of half an ounce of methamphetamine by Vela-Uribe to the undercover detective. During the cocaine sale on October 9, 2013, the undercover detective told Vela-Uribe that he wanted to purchase half an ounce of methamphetamine. Vela-Uribe was unable to contact his supplier and told the detective that he would contact the detective if he could get the methamphetamine. Surveillance units followed Vela-Uribe to two unrelated residences. While at the second residence, Vela-Uribe called the detective and told him that he was on his way to pick up the methamphetamine and that it would take him about twenty minutes. Surveillance units followed Vela-Uribe, but they lost sight of Vela-Uribe's vehicle for three to four minutes when he was about a quarter mile from Castro's residence. Surveillance units relocated Vela-Uribe's vehicle and followed him to the gas station where he sold a half ounce of methamphetamine to the detective for $600. Surveillance units then observed Vela-Uribe drive to Castro's residence and saw him run to the front door. Vela-Uribe left two minutes later, but law

enforcement could not determine if he went into the residence or made contact with anyone in the residence.

The State's theory is that Vela-Uribe went to Castro's residence and got the methamphetamine, went to the gas station and sold it, and then returned to Castro's residence to drop off the money. But the information provided is insufficient to provide a fair probability that methamphetamine would be found in Castro's home. Simply put, the State's theory relies upon speculation that Vela-Uribe actually went to Castro's residence before the sale to obtain the drugs and that Vela-Uribe delivered money to the residence after the sale. Speculation is not a "substitute for concrete facts that would establish probable cause for the search of the residence." Sanchez, 141 So. 3d at 1287. Vela-Uribe never named his supplier and was never seen at Castro's house prior to the sale. And as far as corroboration of the vague tip that gave no time frame, the tipster relayed that Castro sold in ounces, but Vela-Uribe sold just half an ounce to the detective. This one sale of half an ounce that was unconnected to Castro's residence prior to the sale was insufficient to corroborate the tip that an unspecified amount of methamphetamine was in Castro's residence at an unspecified time in the past.

Further, no police surveillance of Castro's residence corroborated the vague tip that methamphetamine was in the residence. Surveillance was conducted, and Castro was seen at his residence several times. But no drug activity was noted in the affidavit, such as brief visits for sellers to obtain drugs from their supplier or for sales to be made. Cf. Loredo, 129 So. 3d at 1192 (noting, among other things, that "the high volume of traffic consistent with the sale of narcotics" corroborated detailed tips from

- 8 -

two informants). And the affidavit mentioned that Castro had four prior arrests since 1999, but the affidavit did not indicate that he had a criminal history for drug offenses. Thus, based on the totality of the circumstances, the information contained in the affidavit did not provide probable cause for issuance of the search warrant for Castro's residence.

The State also contends that the good faith exception set forth in United States v. Leon, 468 U.S. 897 (1984), precludes suppression of the evidence in this case. The parties discussed the good faith exception at the hearing with the trial court, but as noted above, neither party introduced any testimony. As the trial court found, the record does not show that law enforcement made any omissions with intent to deceive or with reckless disregard for the truth.

But even without any omissions or misrepresentations by law enforcement, the good faith exception does not apply when "an objectively reasonable officer would have known that the affidavit was insufficient to establish probable cause for the search." Gonzalez, 38 So. 3d at 230. Rather, when it is determined that an affidavit is insufficient to establish probable cause, "the good faith exception applies as long as the affidavit was not so lacking in indicia of probable cause as to render official belief in its validity unreasonable." McGill, 125 So. 3d at 352. When there is "a real paucity of facts, a very weak case, the law is well established that where 'the supporting affidavit fails to establish probable cause to justify a search, Florida courts refuse to apply the good faith exception.' " Mesa v. State, 77 So. 3d 218, 223 (Fla. 4th DCA 2011) (quoting Garcia v. State, 872 So. 2d 326, 330 (Fla. 2d DCA 2004)).

Here, even the trial court recognized that the anonymous tip information in the affidavit was "clearly insufficient **on its own** to establish probable cause for anything." But the addition of the undercover purchase is wholly insufficient to show a nexus to Castro's residence. In arguing for application of the good faith exception, the State contends that the officer's reliance on the affidavit was objectively reasonable and that the officer conducted an independent investigation. But that investigation did not provide the nexus between methamphetamine and Castro's residence. Castro did not make the sale, and Castro's name was never mentioned. Vela-Uribe was not even seen at Castro's residence prior to the sale of methamphetamine to the detective, and when Vela-Uribe was seen there after the sale, he was not observed making contact with anyone. The affiant noted that Castro had been seen at his residence several times, but the affiant did not state that any suspicious activity was observed.

The information provided in the affidavit that relies upon speculation is so weak that an objectively reasonable officer would have known that the affidavit was insufficient to establish probable cause for a search of Castro's residence. Thus, we conclude the good faith exception is inapplicable and that the trial court should have granted the motion to suppress evidence. Therefore, we reverse Castro's convictions and sentences and remand for discharge.

Reversed and remanded for discharge.


CRENSHAW and LUCAS, JJ., Concur.