DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

JEAN CHERY,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

No. 2D19-2444

_____

September 17, 2021

Appeal from the Circuit Court for Polk County; William D. Sites,
Judge.

Howard L. Dimmig, II, Public Defender, and Karla D. Ellis, Special
Assistant Public Defender, Bartow, for Appellant.

Ashley Moody, Attorney General, Tallahassee, and Linsey Sims-
Bohnenstiehl, Assistant Attorney General, Tampa, for Appellee.


SLEET, Judge.

Jean Chery challenges his convictions and sentences for two

counts of trafficking in cocaine and one count each of trafficking in

amphetamine, possession of oxycodone, possession of cannabis, and maintaining a structure to keep or sell controlled substances. Police obtained evidence to support these charges in a search of Chery's residence conducted pursuant to a search warrant. Because the affidavit in support of the search warrant application is insufficient to establish probable cause, the trial court erred in denying Chery's motion to suppress the evidence. Accordingly, we reverse his convictions and sentences.

The affidavit in support of the search warrant application states the following:

> On 8/4/16, I [the affiant detective] received a phone call from Casie Aguilera stating that "JJ" contacted her and asked her to meet at the Auburndale Walmart parking lot located at 2120 U.S. Highway 92 Auburndale, Florida 33823. Aguilera stated that upon making contact with JJ, he proceeded to place two duffle bags in the trunk of her Dodge Charger. Aguilera contacted me and stated she was not aware of what the duffle bags contained but wanted law enforcement to take possession of the bags. [A second detective] responded to Aguilera's residence located at 1148 Taylor Street Auburndale, Florida 33823 and took possession of the two duffle bags. [That detective] located multiple kilograms of methamphetamine and cocaine inside of the two duffle bags. While [that detective] was at the residence Casie Aguilera stated that Hector Aguilera Jr. contacted her via phone and wanted to take possession of the two duffle bags that contain the narcotics. At a later time on this same day Hector Aguilera Jr. was placed

2

under arrest at the residence located at 1148 Taylor Street Auburndale, Florida in reference to an active Polk County warrant.

Hector Aguilera stated that he would cooperate with law enforcement and could provide information in reference to JJ. I showed Hector Aguilera a Polk County Sheriff's Office jail database photograph of "JJ" and he positively identified JJ as Jean Fontal Chery Jr. Hector Aguilera provided a recorded statement to law enforcement stating that he met Chery on this morning (8/4/16) at the Walmart parking lot located in Auburndale, Florida. Hector Aguilera stated Chery drove him to Chery's residence which was later positively identified by Aguilera to be [address redacted] (place to be searched).

Hector Aguilera stated the place to be searched is a brown in color brick apartment which is a two-bedroom apartment with one bathroom. Hector Aguilera stated that Chery sleeps in the front bedroom and Chery's mother sleeps in the back bedroom which is the furthest away from the front door.

Hector Aguilera stated that Chery advised him that he had a lot of work and it was time for him to get on his feet. Hector Aguilera stated that work is a street slang term for narcotics. Hector Aguilera stated that Chery advised him that he was aware of Hector Aguilera Sr being placed under arrest. Hector Aguilera stated that Chery was nervous about the situation and wanted to smoke cannabis. Hector Aguilera stated that Chery advised him that Hector Aguilera Sr. delivered two duffle bags that contained a large quantity of methamphetamine and cocaine. Hector Aguilera stated that Chery showed him the two duffle bags that were located in a closet. Hector Aguilera stated that he did not feel comfortable being at the place to be searched after learning about the two duffle bags.

3

Hector Aguilera stated that he observed approximately five to seven ounces of cocaine and methamphetamine in Chery's bedroom which were in individual plastic bags. Hector Aguilera stated that he is aware of how much an ounce of methamphetamine and cocaine looks like. Hector Aguilera stated that Chery stated that Hector Aguilera Sr [sic] delivered him nine ounces of methamphetamine and cocaine at the beginning of the month of August. Hector Aguilera stated that Chery advised him that he is purchasing the ounces for $800 but is selling the ounces for $950. Hector Aguilera stated that Chery offered to sell him methamphetamine.

A Florida Driver's and Vehicle Information Database query was conducted and the address listed on Chery's driver's license is [address redacted]. The address has been listed as Chery's address since 10/05/2011.

On appeal, Chery argues that there are no facts in the affidavit to establish that the affiant had personal knowledge of the reliability of the informant, Aguilera Jr., and that the affidavit did not contain sufficient information to independently corroborate the information supplied by Aguilera Jr. We agree.

> Under the totality of the circumstances test, the proper analysis [for determining whether an affidavit provides the necessary probable cause to support issuance of a search warrant] is whether, given all the circumstances set forth in the affidavit, "there is a fair probability that contraband or evidence of a crime will be found in a particular place."

4

*State v. Loredo*, 129 So. 3d 1188, 1191 (Fla. 2d DCA 2014) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "The affidavit must state that the affiant has personal knowledge of the confidential informant's veracity or the affidavit must contain sufficient independent corroborating evidence." *Id.* (quoting *Pagan v. State*, 830 So. 2d 792, 806 (Fla. 2002)). Nothing in the affidavit in this case indicates that the affiant had personal knowledge of Aguilera Jr.'s reliability or veracity. As such, we must determine whether the affidavit contains sufficient corroborating evidence to establish a fair probability that evidence of a crime would be found at the place to be searched. *See Castro v. State*, 224 So. 3d 281, 286 (Fla. 2d DCA 2017) ("In considering the totality of the circumstances, when evidence of the tipster's veracity and reliability is lacking, there must be sufficient independent corroborating evidence."). We conclude that the affidavit here lacks sufficient corroboration.

Besides information obtained from Aguilera Jr., the affidavit relies on information and physical evidence obtained from Casie Aguilera. Although this court has held that "the credibility of one informant can be bolstered by information given by another informant," *Loredo*, 129 So. 3d at 1192, none of the information

5

provided by Casie Aguilera concerned Chery's residence. Although she had met Chery at Wal-Mart and received drugs from him there, nothing in the affidavit suggests that she had been to Chery's residence or that she even knew where it was. As such, there was nothing about Casie Aguilera's statements to police that would corroborate Aguilera Jr.'s claim that contraband would be found in Chery's residence.

Additionally, there was no independent investigation on the part of police to corroborate that claim. Police did search a driver's license database and confirmed that the address Aguilera Jr. provided as Chery's residence had been listed as Chery's address on his driver's license since 2011. But such information only corroborated Aguilera Jr.'s claim that he knew where Chery lives; it did not corroborate his claim that drugs could be found at that residence. *See Castro,* 224 So. 3d at 287 ("Further, no police surveillance of Castro's residence corroborated the vague tip that methamphetamine was in the residence."); *cf. Loredo,* 129 So. 3d at 1192 ("[S]urveillance . . . conducted less than a week before the warrant was signed [as] part of [a] two-week period of surveillance . . . show[ed] activity consistent with drug traffic[king,]

6

corroborat[ing] the information provided by [the confidential informants]. The surveillance, along with [the resident's] criminal history, corroborates the detailed information from two different informants to support a reasonable probability that contraband would be present when the search warrant was executed."). The affidavit does not establish that the police did any independent surveillance of either Chery or his residence. And the affidavit does not address any criminal history of Chery's, let alone one involving narcotic sales. *See Castro*, 224 So. 3d at 287 ("[T]he affidavit mentioned that Castro had four prior arrests since 1999, but the affidavit did not indicate that he had a criminal history for drug offenses.").

The State maintains that even if this court determines that the search warrant affidavit lacks personal knowledge of Aguilera Jr.'s reliability and corroborating evidence of his claim that contraband was present in Chery's apartment, the good faith exception to the exclusionary rule applies, making the denial of Chery's motion to suppress proper. We disagree.

As explained in *United States v. Leon*, 468 U.S. 897, 920 (1984), the good faith exception to the exclusionary rule applies

7

where "an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope." However, "the officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues must be objectively reasonable, and it is clear that in some circumstances the officer will have no reasonable grounds for believing that the warrant was properly issued." *Id.* at 922-23 (citation omitted) (footnotes omitted).

Here, the affidavit in support of the warrant lacked any indicia of reliability and corroboration. As such, reliance on it as proper support for a search warrant was not objectively reasonable, and the good faith exception is inapplicable. *See Sanchez v. State*, 141 So. 3d 1281, 1287 (Fla. 2d DCA 2014) (holding that the good faith exception was inapplicable where "an objectively reasonable officer would have known that the affidavit was insufficient to establish probable cause for the search" (quoting *Gonzalez v. State*, 38 So. 3d 226, 230 (Fla. 2d DCA 2010))); *Garcia v. State*, 872 So. 2d 326, 330 (Fla. 2d DCA 2004) ("Where, as here, the supporting affidavit fails to establish probable cause to justify a search, Florida courts refuse to apply the good faith exception.").

Because the affidavit in support of the search warrant failed to establish that the affiant had personal knowledge of the informant's reliability and veracity and because the affidavit lacked any corroboration of the informant's claims, the search warrant was issued in error. As such, the fruits of the search should have been excluded. Accordingly, we reverse Chery's convictions and sentences.

Reversed.

KHOUZAM and LABRIT, JJ., Concur.

_____

Opinion subject to revision prior to official publication.